Michael Lee WELLS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 94–SC–133–MR.

Supreme Court of Kentucky.

Feb. 16, 1995.

Ann T. Eblen, Louisville, for appellant.

Michael Lee Wells, pro se.

Chris Gorman, Atty. Gen., Rickie L. Pearson, Cindy A. Goldhill, Asst. Attys. Gen., Crim. Appellate Div., Frankfort, for appellee.

LAMBERT, Justice.

Appellant, Michael Lee Wells, was convicted in the Jefferson Circuit Court of murder and of theft by unlawful taking over $300. He was sentenced to life imprisonment for murder and five years for theft, with the sentences to run consecutively. He appeals as a matter of right.

Appellant had promised his girlfriend that he would provide money to buy her a choir robe so that she could sing in the church choir. He asked her to take him to a bank but returned to the car without the needed funds, claiming to have lost his account book. He then directed her to the home of Charlie Robinson where he had visited the prior evening, on the theory that the account book could be there. Appellant had no account at the bank.

While appellant's girlfriend waited in the car, he went in to visit with Mr. Robinson, an old acquaintance and one to whom appellant owed money for a cocaine purchase the previous evening. Once inside the home, appellant attempted to rob Robinson and stabbed him in the back with a kitchen knife that appellant had brought from his girlfriend's house. Mr. Robinson, with the knife still in his back, was able to call 911 and survived until paramedics arrived. Before his death, Robinson identified appellant as the perpetrator to a paramedic, to an accompanying policeman, and to a police officer at the hospital.

After leaving Robinson's house, appellant instructed his girlfriend to drive him back to the bank. While inside, appellant reached over the counter and stole $500 in government food stamps. The couple then proceeded to the church to purchase the choir robe.

When they arrived, appellant instructed his girlfriend to go inside to get the robe while he waited in the car with the money. Once his girlfriend was inside, appellant sped away from the church, later explaining to her that he was embarrassed that he could not deliver the money as he had promised.

Appellant was first arrested on the theft charge. During questioning he became belligerent and violent. While paperwork was being completed, appellant told the officers that he had nothing else to say and wanted to be taken to the jail. At that point Detective Greer told the other officers that she would need additional time to complete paperwork on an expected additional murder charge and to inform the jail officials. Appellant again became loud and belligerent demanding to know the circumstances of which Greer was speaking. Appellant, calmer at the request of Greer, asked to what she was referring. Greer explained that he would be charged with first degree assault which would be elevated to murder if the victim died. Appellant asked if it was about "that thing on Iowa (street) with old Charlie (the victim)?" At that point, Greer re-Mirandized Appellant. Appellant then explained that he had purchased cocaine from the victim the day before the stabbing and had returned the next day to find his account book. Appellant de-

nied stabbing the victim and stated that he had nothing else to say. He was then taken out of the room. Before beginning transit to the jail, appellant was momentarily returned so that photographs could be taken. At that point, appellant asked if the victim was really going to die. Greer told him that she did not know but that there was a very good chance. Appellant then stated, "I didn't mean to, I didn't mean nothin'."

At a pre-trial suppression hearing, the trial court suppressed appellant's statement concerning "that thing on Iowa with old Charlie" because it occurred before Miranda warnings were re-administered. The trial court, however, refused to suppress the statement that "I didn't mean to, I didn't mean nothin'," finding that Officer Greer's statement concerning an additional charge against appellant was not the functional equivalent of questioning.

Appellant was found guilty of murder and theft by unlawful taking over $300. He was sentenced to life imprisonment for murder, and five years for the theft, with the sentences to run consecutively.

 Appellant's first contention is that the three statements made by Charles Robinson, the victim, just prior to his death were inadmissible hearsay and should have been excluded by the trial court. An out of court statement offered, in court, to prove the truth of the matter asserted is not admissible unless it meets one of our well established exceptions. These exceptions grew from ancient common law supported by the theory that the character and context of such statement adds sufficient reliability to permit admission. Appellant claims that three statements, attributed to the victim and made just after the stabbing, were unreliable hearsay not within any exception. On this we cannot agree.

 The facts and context surrounding the victim's identification of appellant as the perpetrator demonstrate sufficient reliability and conformity with the codified exceptions so that admissibility at trial was not unfairly prejudicial. KRE 803(2) allows for statements "uttered under the stress of nervous excitement and not after reflection or delib-

eration" to be admitted as hearsay exceptions. *See Souder v. Commonwealth,* Ky., 719 S.W.2d 730, 733 (1986).

These statements of identification are also admissible under the dying declaration exception to the hearsay rule. The rule provides for admissibility "[i]n a criminal prosecution ... a statement made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be his impending death." KRE 804(b)(2). In the present case, the victim's statements to the 911 operator and the treating EMT were made within minutes of the stabbing and while the knife was still imbedded in his back. The statement to Detective Jackman at the hospital was made moments after the victim was told that his situation was extremely critical and that he could die at any moment. We can think of no better example of a dying declaration than the victim's identification of his assailant in the present case. As such, we affirm the trial court's allowance of such testimony.

Appellant next asserts that Detective Greer's request that two other officers inform jail personnel that additional charges may be forthcoming was the functional equivalent to questioning and that his statements following should have been suppressed. After a hearing on appellant's motion to suppress, the trial court determined that the statement "I didn't mean to, I didn't mean nothin' " was not the fruit of police interrogation. The court further determined that the detective's directive to inform jail personnel of upcoming charges was not the functional equivalent of interrogation.

■ *Miranda v. Arizona* requires the express declaration of a defendant's rights prior to custodial interrogation. Otherwise suppression is the remedy. *Miranda,* 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Interrogation has been defined to include "any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect ... focus[ing] primarily upon the perceptions of the suspect, rather than the intent of the police." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980).

■ In *Innis,* a defendant arrested for robbery committed with a shotgun was in transit to the police station when officers conversed about the safety of handicapped children if one were to find the missing shotgun. The custodial defendant then escorted the police to the location of the shotgun used in the robbery, presumably to prevent an accident as the officers had discussed. The United States Supreme Court found that the officer's conversation was not the equivalent of a custodial interrogation requiring *Miranda* type warnings and that suppression was unnecessary. *Innis,* 446 U.S. at 301, 100 S.Ct. at 1689.

In the present case, the Detective's statement to other officers concerning additional charges cannot be considered the functional equivalent of questioning. Those statements may well be considered "normally attendant to arrest and custody." *Id.* Furthermore, such a statement does not evidence a functional equivalent to interrogation which would require suppression. The trial court correctly determined this to be a voluntary statement and we affirm that ruling.

During jury selection, the trial court announced that a jury of twelve would be chosen with two alternate jurors. The Commonwealth was given six peremptory challenges and it used three of those to exclude three of the four black venire persons. The remaining black juror was selected and served on the jury which found appellant guilty.

■ Defense counsel made a timely motion under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to protest an alleged attempt to exclude jurors based on their race. *Batson* requires the defense to make a prima facie case of purposeful discrimination, and only then will the burden be shifted to the prosecution to rebut such a claim. Included in the requirements is the need to show that the facts and circumstances of the selection raise an inference that the prosecutor used peremptory challenges to remove jurors on the basis of race.

During voir dire, one of the black jurors stricken responded that his cousin had been convicted of murder for stabbing another person, a circumstance not unlike the present case. Another juror explained that her sister had been charged with shoplifting and drug related offenses and had been admitted to a drug rehabilitation program. The present case had an important drug component.

After peremptory challenges had been exercised but before the *Batson* motion was made, the bailiff informed the trial judge that a juror had spoken with a witness during the break. This was the third black juror upon whom the Commonwealth had used a peremptory challenge.

After appellant made his *Batson* motion, the Commonwealth responded that no prima facie showing of discrimination had been made, and that no response was necessary. The trial court then recessed to review the *Batson* opinion. Upon consideration, the court concluded that appellant had failed to make a prima facie showing of discrimination under the present facts. The court noted that it had listened during voir dire and reviewed the number of strikes exercised, and concluded that the Commonwealth had not engaged in race based peremptory challenges which would require the presentation of race neutral reasons to support the removal of the black jurors.

In the federal court system, it has been determined that a *Batson* violation occurs when a struck black juror is treated differently than prospective white jurors who have both disclosed similar circumstances. See generally, *United States v. Staples,* 30 F.3d 108 (10th Cir.1994); *United States v. Guerra–Marez,* 928 F.2d 665 (5th Cir.1991). Appellant argues that a stricken black juror whose husband was an attorney was similarly situated to white jurors who were related to persons in the legal profession. This stricken juror, however, also disclosed that her sister had been arrested for shoplifting and drug charges and was now committed to a drug rehabilitation program.

The trial court is in the best position to determine the intent of peremptory challenges. In *Hernandez v. New York,* the Supreme Court determined that a clearly erroneous standard was appropriate when reviewing a trial court's finding of no discriminatory intent in the exercise of peremptory challenges, and that "the trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal." *Hernandez v. New York,* 500 U.S. 352, 364, 111 S.Ct. 1859, 1868, 114 L.Ed.2d 395 (1991); *see also Commonwealth v. Snodgrass,* Ky., 831 S.W.2d 176 (1992). In the present case, the trial court's finding was not clearly erroneous and there was no abuse of discretion. Giving deference to the trial court in the present case, we find no reversible error.

In addition to the brief by counsel, appellant has also filed a pro se brief which raises numerous issues of alleged reversible error. Appellant argues that the jury instructions were improper, violating his constitutional rights. Given the facts of the case and the trial court's use of approved instructions, used throughout the Commonwealth, there was no error.

Appellant also contends that a Commonwealth witness violated his rights in testifying about his character. No reference is made to the record as to this alleged testimony and we find that no violation occurred. In addition, allegations of improper statements by the Commonwealth during opening statements are without merit, as are restatements of earlier arguments concerning the victim's identification of appellant as the perpetrator.

■ Appellant also alleges that the Commonwealth violated KRS 500.110 as he was not brought to trial within 180 days of his demand for a speedy trial in December of 1992. On April 8, 1993, appellant's trial counsel filed a motion to reassign the trial date as he replaced other counsel on March 8, 1993. The trial court granted the motion and moved the date of trial to August 31, 1993. KRS 500.110 allows the trial court to grant any necessary or reasonable continuances. Appellant, having asked for a continuance, cannot now claim that the relief then sought violated his right to a speedy trial. As such, there was no error in the trial court's ruling.

**304**

Appellant was sentenced to life imprisonment and five years imprisonment with the terms to run consecutively. Our recent decision in *Bedell v. Commonwealth,* Ky., 870 S.W.2d 779, 783 (1994), prohibits a sentence of years to be entered consecutive to a life sentence. As such, we reverse and remand for correction of the sentence in accord with *Bedell.*

The judgment of conviction entered in the Jefferson Circuit Court is affirmed and remanded for sentencing consistent with this opinion.

STEPHENS, C.J., and LEIBSON, REYNOLDS, SPAIN, STUMBO and WINTERSHEIMER, JJ., concur.