Cassandra SMITH, Appellant,

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2008–SC–000060–DG.

Supreme Court of Kentucky.

March 18, 2010.

Rehearing Denied June 17, 2010.

Daniel T. Goyette, Louisville Metro Public Defender, Elizabeth B. McMahon, Assistant Public Defender, Office of the Jefferson District Public Defender, Louisville, KY, Counsel for Appellant.

Jack Conway, Attorney General, Jeffrey Allan Cross, Criminal Appellate Division, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Appellant, Cassandra Smith, appeals from a Court of Appeals decision affirming a Jefferson Circuit Court judgment entered upon a jury verdict convicting her of first-degree possession of a controlled substance and possession of drug paraphernalia. For these crimes, pursuant to a sentencing agreement with the Commonwealth, Smith was sentenced to a total of three years to serve, probated for five years.

On appeal, Smith contends that the trial court erred by denying her motion to suppress several incriminatory statements she made to police during the execution of a search warrant at her residence, and by precluding her from introducing evidence concerning her husband's prior felony drug convictions. For the reasons stated below, we conclude that the trial court erred by failing to suppress Smith's statement, which implied that she had drugs in her pocket, made in response to a question asked by police after she was handcuffed. Because the admission of this evidence was not harmless, we reverse Smith's conviction for first-degree possession of a controlled substance and remand for a new trial. We affirm the decision of the Court of Appeals in all remaining respects.

### FACTUAL AND PROCEDURAL BACKGROUND

Following an investigation which appeared to implicate Smith in drug traffick-

ing, Louisville Police obtained a warrant to search her residence. On April 24, 2003, police executed the warrant. In executing the warrant police used what was characterized as a "dynamic entry," which involved ramming the door open to gain entry into the residence. Smith and her two children, ages twelve and eleven, were home at the time.

After entering the residence, Sergeant Yvette Gentry found Smith in her bedroom. Upon encountering Smith, Gentry immediately handcuffed her and, without advising her of her rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), asked her if she had any drugs or weapons on her. Smith replied to the effect that "she had something in her pocket."[1] Based upon this response, Gentry found and removed a packet containing four rocks of crack cocaine from Smith's pants pocket. This cocaine served as the basis of her indictment for trafficking in cocaine and her eventual conviction for possession of the drug.

After recovering the cocaine, Gentry arrested Smith and escorted her into the living room where she was met by Detective Scott Gootee. Gootee testified that pursuant to normal routine, he then gave Smith the *Miranda* warnings; however, no other witness recalled this and the trial court concluded he had not. The record is unclear about what prompted Smith to make her next comments, though there was testimony that one of the officers may have said something about the children being present and whether they could be moved elsewhere. In any event, Smith made statements to the effect "well, I knew this was going to happen one day so that's why I've told my kids this may

happen one of these days", and that she "was not a big drug dealer but just did it to get by." In effect, the statements amounted to an admission of drug dealing.

In the remaining course of the search, police discovered baggies which appeared to contain cocaine residue. The baggies were the basis for the possession of the drug paraphernalia charge.

On February 24, 2004, Smith was indicted for first-degree trafficking in a controlled substance (cocaine) and possession of drug paraphernalia. In due course she moved to suppress the incriminating statements as previously set forth.

Following an evidentiary hearing, the trial court initially ordered all of the statements suppressed. The Commonwealth filed a motion for reconsideration which persuaded the trial court to reverse its ruling. Under the trial court's ultimate ruling the statement made in the bedroom, implying she had drugs in her pocket, was held to be admissible on the basis that Smith was not in custody at the time she made it. The living room statements were held to be admissible on the basis that those statements were not made in response to any police inquiry designed to elicit an incriminating statement, and thus it was irrelevant whether or not she had been Mirandized.

At trial, Smith's defense was that before the police executed the warrant, her husband, while out on work-release from jail, came by her residence and, while she was visiting with him, placed something in her pants pocket. She assumed it was money, but, as it turned out, was actually the crack cocaine police found in her pants pocket. Smith thus argued that she did not

---

1. Smith's statements at the scene of her arrest were not recorded. The quotes attributed to her are actually paraphrased reports of police witnesses, the accuracy of which is not disputed.

knowingly possess the cocaine discovered in her pocket.

The jury found Smith not guilty of trafficking in cocaine, but convicted her of the lesser-included offense of possession of cocaine. She was also convicted of possession of drug paraphernalia. Following the jury's verdict in the guilt phase, Smith entered into a sentencing agreement with the Commonwealth under which she would receive a sentence of three years, probated for five years.

The Court of Appeals affirmed Smith's conviction, and we thereafter granted discretionary review.

### THE TRIAL COURT ERRED BY FAILING TO SUPPRESS THE BEDROOM STATEMENT

█ Smith first argues that the trial court erred by failing to grant her motion to suppress the statement she made to Officer Gentry in her bedroom. The trial court denied the motion based upon its conclusion, affirmed by the Court of Appeals, that Smith was not in custody for *Miranda* purposes when she was asked by Gentry whether she had any drugs or weapons on her.

As previously discussed, immediately after entering Smith's residence, Officer Gentry found her in the bedroom. Gentry handcuffed Smith and, without Mirandizing her, asked if she had any drugs or weapons on her. Smith responded that she "had something in her pocket." Gentry searched Smith's pocket and discovered a packet containing crack cocaine, the only drugs found during the execution of the search warrant.

Smith argues that her statement should be suppressed because it was the product of an un-mirandized custodial interrogation. She also argues that the statement was not harmless because it directly con-

tradicted her trial defense that she was unaware the drugs were in her pocket. Relying on *Taylor v. Commonwealth*, 182 S.W.3d 521 (Ky.2006), the Commonwealth argues that the handcuffing of Smith did not constitute custody for *Miranda* purposes and thus her statement was admissible.

We do not regard *Taylor* as controlling here for the simple reason that Taylor was not interrogated. Taylor spontaneously told the officer that handcuffed him that he had crack cocaine and marijuana in his pockets. "The statements made by Taylor were not in response to any police statement reasonably calculated to elicit an incriminating response. *Miranda* requires an individual who is stopped to be apprised of his/her rights only in the context of a custodial interrogation. Here, there was no custodial interrogation." *Id.* at 523. Thus, *Miranda* and Fifth Amendment rights were not implicated. Because no interrogation occurred in Taylor, its indication that "Taylor was not in custody for *Miranda* purposes simply because he was handcuffed and detained in order to prevent his flight until the investigation was completed" is pure dicta and is not persuasive. *Taylor*, 182 S.W.3d at 524.

In reviewing whether Smith's statement was admissible, we address three questions: whether Smith was placed in custody for *Miranda* purposes as a result of being handcuffed; whether Gentry's questioning was interrogation; and if she was in custody for *Miranda* purposes and was interrogated, whether the public safety, or any other, exception applies to allow the admission of her statement.

█ We first address whether Smith was in custody at the time she made the bedroom statement. We review the question of whether a defendant was in custody *de novo*. *Commonwealth v. Lucas*, 195 S.W.3d 403, 405 (Ky.2006).

It is fundamental that *Miranda* only applies to situations implicating compelled self-incrimination. "Indeed, far from being prohibited by the Constitution, admissions of guilt by wrongdoers, *if not coerced,* are inherently desirable.... Absent some *officially coerced* self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions." *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) (quoting *United States v. Washington,* 431 U.S. 181, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977)) (Emphasis added). To the contrary, custodial questioning is inherently coercive, and protection against this inherent coercion is what *Miranda* is intended to prevent. *Michigan v. Mosley,* 423 U.S. 96, 112, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). Thus, "*Miranda* warnings are only required when the suspect being questioned is 'in custody.'" *Lucas,* 195 S.W.3d at 405 (citing *Thompson v. Keohane,* 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995)).

"Custodial interrogation has been defined as questioning initiated by law enforcement after a person has been taken into custody or otherwise deprived of freedom of action in any significant way." *Id.* "*Miranda* warnings are required only where there has been such a restriction on the freedom of an individual as to render him in custody." *Id.* "The inquiry for making a custodial determination is whether the person was under formal arrest or whether there was a restraint of his freedom or whether there was a restraint on freedom of movement to the degree associated with formal arrest." *Id.* (citing *Thompson,* 516 U.S. 99, 116 S.Ct. 457; *United States v. Mahan,* 190 F.3d 416 (6th Cir.1999)).

Custody does not occur until police, by some form of physical force or show of authority, have restrained the liberty of an individual. *Baker v. Commonwealth,* 5 S.W.3d 142, 145 (Ky.1999). The test is whether, considering the surrounding circumstances, a reasonable person would have believed he or she was free to leave.[2] *Id.* (Citing *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). The United States Supreme Court has identified factors that suggest a seizure has occurred and that a suspect is in custody: the threatening presence of several officers; the display of a weapon by an officer; the physical touching of the suspect; and the use of tone of voice or language that would indicate that compliance with the officer's request would be compelled. *Mendenhall,* 446 U.S. at 544, 100 S.Ct. 1870; *Cecil v. Commonwealth,* 297 S.W.3d 12 (Ky.2009). Other factors which have been used to determine custody for *Miranda* purposes include: (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so, whether the suspect possessed unrestrained freedom of movement during questioning, and whether the suspect initi-

---

2. We caution that a detainee's subjective belief that he is not free to leave is not, standing alone, dispositive of whether there is custody for *Miranda* purposes. A suspect detained in a stop pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) is seized and not free to leave, but nevertheless *Miranda* warnings are not required under such detentions. *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Thus, custody for *Miranda* purposes necessarily exceeds the brief detention and less intrusive questioning anticipated under *Terry,* and identification of *Miranda* custody requires application of the additional factors as identified above to the totality of the circumstances.

ated contact with the police or voluntarily admitted the officers into the residence and acquiesced to their requests to answer some questions. *U.S. v. Salvo,* 133 F.3d 943, 950 (6th Cir.1998).

We are persuaded that, upon application of the above factors to the facts of this matter, under the totality of the circumstances, Smith was in custody for *Miranda* purposes when she made the bedroom statement to Officer Gentry. First, the police's use of a "dynamic entry" followed by the influx of several police officers set the tone for an inherently coercive atmosphere. Having several police officers burst through the front door of one's residence is obviously threatening to anyone inside. Moreover, in connection with her handcuffing, there was a physical touching of Smith. Further, under the described circumstances, it is clear that Smith was not free to leave, and did not possess unrestrained freedom of movement. And finally, the handcuffing itself was a restraint on freedom akin to formal arrest.[3] Based upon the totality of circumstances, in view of the factors enumerated, we are constrained to conclude that Smith was in custody for *Miranda* purposes.

■ Since we hold that Smith was in custody at the time she made the statement, we next consider whether Officer Gentry's question "do you have any weapons or drugs" amounted to police interrogation. Interrogation has been defined to include "any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect ... focus[ing] primarily upon the perceptions of the suspect, rather than the intent of the police." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *Wells v. Commonwealth,* 892 S.W.2d 299, 302 (Ky.1995). It is self-evident that Gentry's unambiguous question ("Do you have any drugs or weapons on you?") intended to illicit, and indeed did illicit, an incriminating response, the statement, "yes, in my pocket."

In summary, the bedroom statement was the product of un-mirandized custodial police interrogation.

■ When a statement is made in violation of Miranda, the usual remedy would be to suppress the statement. *Miranda,* 384 U.S. 436, 86 S.Ct. 1602. However, the Commonwealth argues that even if Smith's statement was a product of custodial interrogation, the statement was nevertheless admissible pursuant to the public safety exception identified in *New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), which we recently adopted in *Henry v. Commonwealth,* 275 S.W.3d 194 (Ky.2008).

■ In *Quarles,* the United States Supreme Court recognized an exception to

---

**3.** We agree that handcuffing alone will not always transform a seizure pursuant to *Terry v. Ohio* into custody for *Miranda* purposes. *See U.S. v. Foster,* 376 F.3d 577, 588 (6th Cir.2004) ("[T]he use of handcuffs [does not] exceed the bounds of a *Terry* stop, so long as the circumstances warrant that precaution"). *Terry,* 392 U.S. at 24, 88 S.Ct. 1868 ("When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreason-

able to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm."). In dicta, *Taylor,* 182 S.W.3d 521, also endorsed this principle. While handcuffing will necessarily weigh strongly that there is custody for *Miranda* purposes, we are not willing to adopt a bright-line rule that it always is. Again, all relevant factors must be weighed, and then an ultimate determination made based upon the totality of circumstances.

the *Miranda* warning requirement which would allow the admission of a statement made in response to a custodial interrogation if the questioning was designed to elicit an answer to protect the public. In *Quarles,* police were pursuing a rape suspect who abandoned a gun in a grocery store. Upon apprehending the suspect, a police officer asked him where the gun was without Mirandizing him, and the suspect stated where the gun was located. The Court held that the statement regarding the gun's location was admissible stating, "We do not believe that the doctrinal underpinnings of *Miranda* require that it be applied in all its rigor to a situation in which police officers ask questions reasonably prompted by concern for the public safety." *Quarles,* 467 U.S. at 655–656, 104 S.Ct. 2626.

Unlike the present case, *Quarles* involved an identifiable and specific danger requiring immediate and unfettered questioning of the defendant to alleviate the risk. As explained in *Quarles:*

> The police in this case, in the very act of apprehending a suspect, were confronted with the immediate necessity of ascertaining the whereabouts of a gun which they had every reason to believe the suspect had just removed from his empty holster and discarded in the supermarket. So long as the gun was concealed somewhere in the supermarket, with its actual whereabouts unknown, it obviously posed more than one danger to the public safety: an accomplice might make use of it, a customer or employee might later come upon it.
>
> In such a situation, if the police are required to recite the familiar Miranda warnings before asking the whereabouts of the gun, suspects in Quarles' position might well be deterred from responding. Procedural safeguards which deter a suspect from responding were deemed

acceptable in Miranda in order to protect the Fifth Amendment privilege; when the primary social cost of those added protections is the possibility of fewer convictions, the Miranda majority was willing to bear that cost. Here, had Miranda warnings deterred Quarles from responding to Officer Kraft's question about the whereabouts of the gun, the cost would have been something more than merely the failure to obtain evidence useful in convicting Quarles. Officer Kraft needed an answer to his question not simply to make his case against Quarles but to insure that further danger to the public did not result from the concealment of the gun in a public area.

*Id.* at 657, 104 S.Ct. 2626.

In this matter, we find that Officer Gentry's interrogation of Smith was not made in relation to any quantifiable public safety threat. While the Commonwealth argues that the police here faced legitimate safety concerns since weapons could be present in Smith's apartment, a vague belief that a weapon could be present is unlike the certain knowledge in *Quarles* and *Henry* that a gun had been discarded in an area open to the public. If a gun was present in Smith's apartment, it posed no danger to the public at large. Thus, we are persuaded that the public safety exception does not apply.

In summary, the bedroom statement was a product of an un-mirandized custodial interrogation not subject to the public safety exception. As such, the trial court erred by failing to suppress the statement. Moreover, the error was prejudicial because the statement contradicted Smith's defense that she was unaware that the drugs were in her pocket. Thus the error was not harmless. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (requiring that consti-

tutional error be "harmless beyond a reasonable doubt"). Upon retrial, the statement should be excluded.

## STATEMENTS IN THE LIVING ROOM

■ Smith next argues that the trial court erred by denying her motion to suppress the statements she made in the living room after being arrested. Again, Smith contends that the statements were a product of custodial interrogation.

After Officer Gentry arrested Smith for being in possession of the cocaine and escorted her into the living room, Smith made comments to the effect of "well, I knew this was going to happen one day so that's why I've told my kids this may happen one of these days", and that she "was not a big drug dealer but just did it to get by."

It is uncontested that Smith was in custody for *Miranda* purposes at the time she made these statements. The trial court factually concluded that Smith did not receive *Miranda* warnings prior to making the statements, but nevertheless permitted the statements to be admitted upon its conclusion that they were not made in response to police interrogation. We agree with the trial court's ruling.

There was conflicting testimony at trial regarding the circumstances which caused Smith to make the incriminating statements. Some testimony indicated that Smith's statements were made spontaneously and were not in response to anything said by the police. If the statements were made spontaneously, there is obviously no bar to the admission of the statements in trial and the trial court correctly denied the motion to suppress. *Miranda,* 384 U.S. at 478, 86 S.Ct. 1602. However, Smith contends that she made the statements in response to an officer's comment to the effect that the children were present

and could they be removed elsewhere. Even if we were to accept Smith's version of events as true, we are persuaded that the officer's comment cannot fairly be characterized as police interrogation, and thus the trial court correctly denied the motion to suppress.

■ *Miranda* requires the express declaration of a defendant's rights prior to custodial interrogation. Otherwise suppression is the remedy. *Miranda,* 384 U.S. at 479, 86 S.Ct. 1602. As previously noted, interrogation has been defined to include "any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect ... focus[ing] primarily upon the perceptions of the suspect, rather than the intent of the police." *Innis,* 446 U.S. at 301, 100 S.Ct. 1682; *Wells,* 892 S.W.2d at 302.

When Smith was brought into the living room her children were present and the record indicates that one of them was quite upset. The officer's question to the effect of "was there anywhere else the children could be removed to" was not reasonably likely to elicit an incriminating response. The question regarded the children's well-being, not Smith's potential drug activities. It could not reasonably have been anticipated that the comment would elicit an incriminating response. As such, we are persuaded that the living room statements were not a product of custodial interrogation, and were properly admitted.

## ARMON PERRY'S PRIOR DRUG CONVICTION

■ Smith's final argument is that the trial court erred by precluding her from introducing evidence concerning three pri-

or drug-related convictions against her husband, Armon Perry. Perry was incarcerated at the time of Smith's arrest, but was qualified for work-release.

As previously noted, Smith's trial defense was that when her husband came by her residence on April 24, 2003, while on work release from jail prior to the execution of the warrant, he, unbeknownst to her, slipped the crack cocaine into her pants pocket. While she knew Perry had placed something in her pocket, she assumed it was money. She argues that admission of his prior drug convictions would corroborate her claim that he had slipped the cocaine into her pocket without her knowledge.

KRE 404(b) provides as follows:

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:

(1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident;

As is clear from the language of the rule, application of KRE 404(b) is not limited to criminal defendants. Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 2.25[2], at 125 (4th ed. LexisNexis 2003). As this Court has previously stressed, KRE 404(b) is "exclusionary in nature," and as such, "any exceptions to the general rule that evidence of prior bad acts is inadmissible should be 'closely watched and strictly enforced because of [its] dangerous quality and prejudicial consequences.'" *Clark v. Commonwealth*, 223 S.W.3d 90, 96 (Ky.2007). (quoting *O'Bryan v. Commonwealth*, 634 S.W.2d 153, 156 (Ky.1982)). As recognized in *Tamme v. Commonwealth*, 973 S.W.2d 13, 29 (Ky.

1998), the list of exceptions enumerated in the rule is illustrative, not exclusive.

Smith's argument in support of admitting the evidence is stated in her brief as follows:

[E]vidence that Armon Perry had previously been convicted of trafficking in a controlled substance and possession of a controlled substance was relevant to show that he was involved in the drug trade, making it likely that he could obtain illegal drugs while out on work release and making it more probable than not that he put the cocaine into Cassandra's pocket, without her knowledge, before returning to jail.

The relevance of Perry's prior convictions is not readily apparent. The claim that Perry put the contraband in her pocket was not challenged. The question is whether she knew he had done so. We fail to see how his prior convictions would assist the jury in deciding whether she knew that the object he put in her pocket was crack cocaine. Notwithstanding our doubt about the relevance of Perry's criminal record, we note that Smith's argument does not specify an enumerated KRE 404(b)(1) exception supporting admissibility. Nor do we believe her argument states a viable non-enumerated exception. To the contrary, as framed, the argument suggests that the evidence would be introduced for the purpose of showing that Perry possessed the character of a drug-dealer with the corresponding propensity to engage in illegal drug-related conduct and, by obtaining the crack cocaine and placing it in Smith's pants pocket, he acted in conformity therewith. However, that is exactly the type of evidence KRE 404(b) is intended to exclude.

In the clear absence of a viable KRE 404(b) exception, we are persuaded that the trial court properly excluded the evi-

dence concerning Perry's prior drug convictions.

## CONCLUSION

For the foregoing reasons the conviction for first-degree possession of a controlled substance is reversed and remanded to the Jefferson Circuit Court for additional proceedings consistent with this decision. The opinion of the Court of Appeals is otherwise affirmed.

MINTON, C.J., ABRAMSON, NOBLE, SCHRODER, and SCOTT, JJ., concur.

CUNNINGHAM, J., not sitting.