# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: FEBRUARY 16, 2017
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2016-SC-000228-MR

LOUIS TORRES        APPELLANT

ON APPEAL FROM FAYETTE CIRCUIT COURT
V.      HONORABLE JAMES D. ISHMAEL, JR., JUDGE
NO. 14-CR-01189

COMMONWEALTH OF KENTUCKY        APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

On October 2, 2014, Sergeant Aaron Greenleaf was working as a detective in the Special Victim's Unit of the Lexington Police Department. In response to a call he received regarding a juvenile sexual assault, Sergeant Greenleaf went to the hospital and spoke with the victim, Alexis[1], who was eleven years' old at the time. Her uncle, Louis Torres (Appellant), was identified as a suspect. Sergeant Greenleaf, along with Sergeant Brotherton and a social worker drove to Nicholasville to speak with Appellant. A uniformed Nicholasville police office was also present.

---

[1] Pseudonyms are being used to protect the anonymity of the child victim.

Once the two detectives arrived at Appellant's residence around 3 A.M., they knocked on the door and were allowed inside by Appellant's nephew, Rene. The Appellant does not challenge the officers' entry into the home. Rene led the officers upstairs to Appellant's room and knocked on the bedroom door. Appellant, who had been awakened, opened the door. Sergeant Greenleaf asked the uniformed Nicholasville officer to step outside because he didn't want Appellant to feel pressured. Sergeants Brotherton and Greenleaf were wearing plain clothes and were carrying concealed weapons. Sergeant Greenleaf informed Appellant that something had come up in the family and then asked Appellant if he would accompany the officers to Lexington to speak with them. Appellant said yes.

Appellant sat in the front passenger seat of an unmarked police car during their journey to Lexington. Sergeant Brotherton informed Appellant on multiple occasions that he was not under arrest. They spoke in English and Spanish. Once they arrived at the Lexington police station, Sergeant Greenleaf interviewed Appellant. Greenleaf informed Appellant that he was not under arrest, that he was free to go, and that he did not want Appellant to think that he was keeping him there against his will. Appellant was also provided an incomplete recitation of the *Miranda* warnings. An interpreter was used during this entire conversation. Appellant stated that he wanted to talk. At no time during the two hour interview did Appellant ask to leave or be taken back to his residence.

2

Appellant was arrested at the end of the interview and charged in Fayette County with multiple counts of sexual abuse.

Prior to trial, Appellant filed a motion to suppress the interrogation evidence. The Fayette Circuit Court made oral findings and ultimately concluded that Appellant was not in custody for *Miranda* purposes. As a result, Appellant entered a conditional guilty plea to three counts of first-degree sexual abuse, reserving the right to appeal the trial court's ruling on the suppression motion. Appellant received a total sentence of twenty years' imprisonment. Appellant now appeals his judgment and sentence as a matter of right pursuant to § 110(2)(b) of the Kentucky Constitution.

## Motion to Suppress

The only issue before this Court is whether the trial court erred in denying Appellant's motion to suppress his interview with the police at the Lexington police station. Of course, the underlying issue is whether Appellant was in custody at the time of the interview or prior thereto. *See Miranda v. Arizona*, 384 U.S. 436 (1966). We review the trial court's factual findings for clear error, but the question of custody is reviewed *de novo*. *King v. Commonwealth*, 302 S.W.3d 649 (Ky. 2010) (reversed on other grounds).

In *Smith v. Commonwealth*, we stated that "[c]ustody does not occur until police, by some form of physical force or show of authority, have restrained the liberty of an individual." 312 S.W.3d 353, 358 (Ky. 2010) (citing *Baker v. Commonwealth*, 5 S.W.3d 142, 145 (Ky. 1999)). The United States Supreme

3

Court has identified more precise factors indicating that a suspect is in custody:

> [T]he threatening presence of several officers; the display of a weapon by an officer; the physical touching of the suspect; and the use of tone of voice or language that would indicate that compliance with the officer's request would be compelled.

*Id.* citing (*United States v. Mendenhall,* 446 U.S. 544, 554 (1980)).

In addition, *Smith* also identified several other factors for courts to consider:

> (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so, whether the suspect possessed unrestrained freedom of movement during questioning, and whether the suspect initiated contact with the police or voluntarily admitted the officers into the residence and acquiesced to their requests to answer some questions.

*Id.* at 358-59 (citations omitted).

Nearly all of the aforementioned factors weigh in favor of the trial court's determination that Appellant was not in custody for *Miranda* purposes during his initial confrontation, transport or questioning by the officers.

Appellant testified at the suppression hearing that he felt he had no choice but to accompany the officers to Lexington. He also argues that he was not fluent in English and therefore could not understand Sergeant Greenleaf's questioning. However, a recording of the encounter at Appellant's residence demonstrates that Appellant had no problem understanding Sergeant Greenleaf's English. In addition, Sergeant Greenleaf specifically asked the uniformed officer to step outside because he didn't want Appellant to feel

4

pressured. And although Appellant may have been surprised when he was awoken by the presence of the officers inside his home, he does not challenge the officers' entry into the home. Moreover, nothing in the record indicates that the officers threatened or physically contacted Appellant, nor did they display a threatening presence at any time.

Appellant was also not in custody while he voluntarily traveled to Lexington with the officers. Appellant was unrestrained and sat in the front seat of the officer's unmarked vehicle during the trip. In this regard, the present case is similar to *Peacher v. Commonwealth*, 391 S.W.3d 821 (Ky. 2013). In *Peacher*, this Court held that the defendant was not in custody due in part to the facts that the defendant "was not frisked and was in no way compelled or restrained. He rode, rather, as a passenger in the front seat of the detective's unmarked vehicle." *Id.* at 847. In addition, Sergeant Brotherton informed Appellant on multiple occasions during the trip that he was not under arrest.

Appellant testified that although he had been informed multiple times that he was not under arrest, he did not feel that way. However, "[t]he test is whether, considering the surrounding circumstances, a reasonable person would have believed he or she was free to leave." *Smith*, 312 S.W.3d at 358. This is an objective test that is not dependent on a defendant's subjective belief. Considering the totality of the surrounding circumstances, Appellant was not in custody during his transportation by the officers to Lexington.

Applying the factors discussed in *Smith*, it is similarly clear that, on balance, Appellant was not in custody for *Miranda* purposes while he was being interviewed at the police station. Although police stations are certainly not the most relaxing venue for questioning, they are one of the most common. In addition, nothing in the record indicates that the officers threatened or physically contacted Appellant, nor did they display a threatening presence during the interview. *See Mendenhall*, 446 U.S. at 554. Furthermore, the interview lasted only two hours. This is not an unreasonable amount of time for questioning.

In *Beckham v. Commonwealth*, for example, the Court determined that the defendant was not in custody even though the defendant's encounter with the police lasted over six hours. 248 S.W.3d 547, 551 (Ky. 2008). In support of its ruling, the Court noted that the interviewing officers informed the defendant that he was free to leave, that the defendant never expressed any desire to leave or cease his cooperation, and that the defendant was not physically coerced by the officers. *Id.* at 551-53.

Similar to *Beckham*, the interrogating officer in the present case, Sergeant Greenleaf, informed Appellant that he was not under arrest and that he did not want Appellant to think that he was keeping Appellant there. Appellant stated that he wanted to talk. At no time during the two hour interview did Appellant ask to leave or be taken back to his residence. Under these circumstances, "a reasonable person would have believed he or she was free to leave." *Smith*, 312 S.W.3d at 358.

6

Therefore, Appellant was not in custody and, thus, not entitled to *Miranda* warnings. As such, Sergeant Greenleaf's incomplete recitation of the *Miranda* warnings prior to the interview was unnecessary and irrelevant for purposes of the foregoing analysis. Accordingly, we affirm the trial court's denial of Appellant's motion to suppress.

## **Conclusion**

For the foregoing reasons, we hereby affirm the judgment and sentence of the Fayette Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Linda Roberts Horsman
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General

7