RENDERED: JULY 14, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0957-MR

COMMONWEALTH OF KENTUCKY                   APPELLANT

v.            APPEAL FROM ROCKCASTLE CIRCUIT COURT
HONORABLE TERESA WHITAKER, JUDGE
ACTION NO. 19-CR-00120-002

PAULA CAMERON                               APPELLEE

AND

NO. 2022-CA-0961-MR

COMMONWEALTH OF KENTUCKY                   APPELLANT

v.            APPEAL FROM ROCKCASTLE CIRCUIT COURT
HONORABLE TERESA WHITAKER, JUDGE
ACTION NO. 19-CR-00120-001

STEVEN CAMERON                           APPELLEE

\*\* \*\* \*\* \*\* \*\*

BEFORE:  CALDWELL, DIXON, AND ECKERLE, JUDGES.

DIXON, JUDGE:  The Commonwealth of Kentucky appeals from orders of the Rockcastle Circuit Court, entered July 21, 2022, granting the motions of Paula and Steven Cameron to suppress evidence.[1]  After careful review of the Commonwealth's briefs, the record, and the law, we reverse.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On May 17, 2019, two officers from the Mount Vernon Police Department responded to a domestic violence (DV) call from Paula.  When the officers arrived at the Cameron residence, Paula identified her husband, Steven, as the perpetrator and indicated that he was driving away from the scene.  Officer Messinger pursued Steven for approximately a half mile and initiated a traffic stop with the sole intent of questioning him about the alleged DV.  However, after learning that Paula was reportedly struck by Steven, Officer Messinger arrested Steven on charges of assault fourth degree.

---

[1]  As these cases share a common nexus of facts, we have elected to address the appeals simultaneously in this consolidated Opinion.

Without instructing Steven as to his *Miranda*[2] rights, Officer Messinger conducted a search incident to arrest and had Steven empty the contents of his pockets, including a prescription bottle of Endocet,[3] onto the back of his vehicle. As Steven was being secured in a police cruiser, a second officer suggested to Officer Messinger that a closer examination of the medication bottle was merited. In response, Steven stated that he did not carry his entire prescription on his person, that he had left some of the pills at his residence, and that he owed someone seventeen pills. Upon further inspection, Officer Messinger observed that though Steven's prescription had been filled with a large quantity of pills that same day, the bottle was missing 30 to 40 pills.

Thereafter, Officer Messinger applied for a search warrant for the Camerons' residence. In addition to outlining his investigative efforts, he included in his supporting affidavit the specific details of his search of the prescription bottle, as well as Steven's assertion that the remaining pills were at his residence. A warrant was issued, and the ensuing search of the residence produced two cell phones, 12 oxycodone pills, half a Suboxone pill, and $11,000 in cash. The Camerons were then jointly indicted on charges of trafficking in a controlled

---

[2]  *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[3]  Endocet is a name brand for oxycodone and acetaminophen tablets.

substance first degree (second offense for Steven) and possession of a controlled substance first degree. KRS[4] 218A.1412; KRS 218A.1415.

The Camerons, through counsel, moved to suppress the evidence obtained via the traffic stop, the search incident to Steven's arrest, and the search of their residence. After hearing Officer Messinger's testimony, the trial court granted the motions, concluding the search exceeded the scope of a lawful search incident to arrest and the evidence obtained from the residence was fruit of the poisonous tree. On appeal, a panel of this Court reversed and remanded[5] for additional fact-finding and for the court to address whether Paula had standing.

The trial court found, by order entered July 1, 2022, that while the traffic stop and arrest of Steven were proper pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1986), and KRS 431.005(2)(a), the prescription bottle, Steven's statements, and the items recovered pursuant to the search warrant should be suppressed due to various violations of their constitutional rights. This interlocutory appeal followed. Additional facts will be introduced as they become relevant.

**STANDARD OF REVIEW**

When reviewing a ruling on a suppression motion, an appellate court generally employs a two-step process.

---

[4] Kentucky Revised Statutes.

[5] *Commonwealth v. Cameron*, No. 2020-CA-0594-MR.

First, findings of fact are reviewed and will not be set aside unless they are clearly erroneous. CR[6] 52.01; *Simpson v. Commonwealth*, 474 S.W.3d 544, 547 (Ky. 2015). Findings of fact are not clearly erroneous if they are supported by substantial evidence. *Commonwealth v. Delaney*, 20 S.W.3d 471, 473 (Ky. 2000). Substantial evidence is "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citation omitted). Also, due regard is given to the opportunity of the circuit court to judge the credibility of the testifying officer and to assess the reasonableness of the officer's inferences. *Commonwealth v. Whitmore*, 92 S.W.3d 76, 79 (Ky. 2002). Second, the circuit court's application of the law to conclusive facts is reviewed de novo. *Simpson*, 474 S.W.3d at 547.

*Commonwealth v. Perry*, 630 S.W.3d 671, 674 (Ky. 2021).

## LEGAL ANALYSIS

The Commonwealth argues on appeal that (1) the search of the prescription bottle was authorized as a search incident to Steven's arrest, (2) Steven's statements were voluntary, (3) the search warrant was valid, or the good-faith exception applies, and (4) regardless, Paula did not have standing to seek exclusion of the evidence. We will address each claim in turn.

---

[6] Kentucky Rules of Civil Procedure.

The Prescription Bottle

The court identified two bases to support the suppression of this evidence. First, the court concluded Steven's rights were violated when, without being *Mirandized*, Officer Messinger inquired during the arrest if he had anything on him and Steven produced the prescription bottle at issue. The Commonwealth contends that *Miranda* warnings were not required because the question was one normally attendant with arrest and refers this Court to *United States v. Woods*, 711 F.3d 737 (6th Cir. 2013), in support. We, however, need not resolve this debate because though Officer Messinger's post-arrest complaint and his affidavit for a search warrant reference the exchange, no corresponding testimony was elicited at the suppression hearing; consequently, the court's finding is not supported by substantial evidence. *See Commonwealth v. Connor*, 636 S.W.3d 464, 472 (Ky. 2021) ("we use the facts elicited during [the suppression hearing] as the basis for our analysis").

In the alternative, the court concluded that Officer Messinger's search of the prescription bottle violated Steven's Fourth Amendment rights. "The Fourth Amendment to the U.S. Constitution and Section 10 of the Kentucky Constitution[7]

---

[7] Kentucky courts have consistently interpreted Section 10 of the Kentucky Constitution to be consistent in both rights and remedies with the Fourth Amendment to the U.S. Constitution. *Parker v. Commonwealth*, 440 S.W.3d 381, 387 (Ky. 2014) (citing *Dunn v. Commonwealth*, 360 S.W.3d 751, 758 (Ky. 2012); *Williams v. Commonwealth*, 364 S.W.3d 65, 68 (Ky. 2011)).

protect citizens from unreasonable searches and seizures by the government."

*Milam v. Commonwealth*, 483 S.W.3d 347, 349 (Ky. 2015) (citing *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980)). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California*, 573 U.S. 373, 382, 134 S. Ct. 2473, 2482, 189 L. Ed. 2d 430 (2014) (citation omitted); *see also Cook v. Commonwealth*, 826 S.W.2d 329, 331 (Ky. 1992). A search incident to lawful arrest is a long-recognized exception that permits two distinct types of warrantless searches: (1) a search of the area within the control of the arrestee, and (2) a "search for and seiz[ure of] any evidence on the arrestee's person in order to prevent its concealment or destruction." *Riley*, 573 U.S. at 383, 134 S. Ct. at 2483 (quoting *Chimel v. California*, 395 U.S. 752, 762-63, 89 S. Ct. 2034, 2040, 23 L. Ed. 2d 685 (1969)).

Deciding the first category applied herein, the court asserted that a vehicle search is only authorized "if there is a reasonable possibility of access to the item"[8] and reasoned that because Steven was secured at the time of the search, Officer Messinger exceeded the scope of the exception. However, as the facts clearly demonstrate the evidence was discovered during a search of Steven's

---

[8] Though not cited by the court, this statement of the law echoes the limits imposed on the search of a vehicle incident to arrest set by the Supreme Court in *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009).

person and not a search of his vehicle, we conclude the court misapplied the law.[9]

Accordingly, as argued by the Commonwealth, the scope of the search is governed

by *United States v. Robinson*, 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427

(1973).

At issue in *Robinson* was whether the officer exceeded the scope of

the search incident to arrest exception when he opened a cigarette package found

on the defendant's person during a pat-down. *Id.* at 220-23, 94 S. Ct. at 469-71.

Upholding the search, the Supreme Court explained that:

> The authority to search the person incident to a lawful
> custodial arrest, while based upon the need to disarm and
> to discover evidence, does not depend on what a court
> may later decide was the probability in a particular arrest
> situation that weapons or evidence would in fact be found
> upon the person of the suspect. A custodial arrest of a
> suspect based on probable cause is a reasonable intrusion
> under the Fourth Amendment; that intrusion being
> lawful, a search incident to the arrest requires no
> additional justification. It is the fact of the lawful arrest
> which establishes the authority to search, and we hold
> that in the case of a lawful custodial arrest a full search of
> the person is not only an exception to the warrant
> requirement of the Fourth Amendment, but is also a
> 'reasonable' search under that Amendment.
>
> . . . Having in the course of a lawful search come upon
> the crumpled package of cigarettes, [the officer] was
> entitled to inspect it; and when his inspection revealed

---

[9] The only facts presented during the suppression hearing from which the court could reach this conclusion arose from the testimony that the contents of Steven's pockets were placed on the back of a truck during the search. We reject any inference that the mere placement of items recovered from the person of the arrestee on a vehicle converts the very nature of the search.

> heroin capsules, he was entitled to seize them as fruits, instrumentalities, or contraband probative of criminal conduct.

*Id.* at 235-36, 94 S. Ct. at 477 (internal quotation marks and citations omitted).[10]

As we agree with the Commonwealth that *Robinson* is instructive and because the prescription bottle was discovered during a contemporaneous search of Steven's person incident to lawful arrest, we conclude that the court erred in suppressing the evidence.

### Steven's Statements

The suppression of this evidence turns on the court's determination that Steven was required to be *Mirandized* prior to his statement. The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" In protection of this right, the Supreme Court in *Miranda* established a prophylactic rule that generally bars the prosecution from introducing in its case-in-chief incriminating statements obtained during custodial interrogations unless the individual was

---

[10] In *Riley*, the Supreme Court reaffirmed the holding of *Robinson* as applied to traditional personal property recovered from the person of the arrestee, though it declined to extend the doctrine to include data stored on an arrestee's cellphone, and acknowledged that opinions of lower courts have upheld such searches. 573 U.S. at 392-93, 134 S.Ct. at 2488. The cases cited included: *United States v. Carrion*, 809 F.2d 1120 (5th Cir. 1987) (billfold and address book); *United States v. Watson*, 669 F.2d 1374 (11th Cir. 1982) (wallet); and *United States v. Lee*, 501 F.2d 890 (D.C. Cir. 1974) (wallet). *Id.*

informed in advance of their constitutional rights. 384 U.S. at 478-79, 86 S. Ct. at 1630.

In the case herein, there is no dispute that Steven was in custody at the time of his statements at issue, but the Commonwealth challenges the court's conclusion that Steven's responses were the result of interrogation. "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attend to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 1689-90, 64 L. Ed. 2d 297 (1980) (footnotes omitted). In determining whether an interrogation has occurred, the primary focus is on the "perceptions of the suspect, rather than the intent of the police." *Id.* Here, the court found that the investigation of the prescription bottle, the opening of the bottle, and the counting of the pills inside were the trigger for Steven's responses, and these actions were reasonably likely to elicit an incriminating response. For various reasons, we disagree.

Again, we note that the court's findings of fact are not supported by substantial evidence. Officer Messinger never testified that he opened the bottle, though a pill count was conducted at some unknown point, and there is no evidence Steven was able to perceive these events. Rather, the uncontroverted

evidence was that when Steven was being placed in the police cruiser, a fellow officer made a statement that Officer Messinger "needed to check" the prescription bottle when he returned. It was at this point that Steven made the challenged statements. Accordingly, the question before us is whether Steven was subjected to interrogation when he overheard a discussion between the officers regarding necessary investigatory steps.

In *Wells v. Commonwealth*, the Kentucky Supreme Court addressed similar conduct where one officer informed her fellows "that she would need additional time to complete paperwork on an expected additional murder charge and to inform the jail officials." 892 S.W.2d 299, 301 (Ky. 1995). Upon Wells' demand for more information, the officer explained that the current charge of first-degree assault would be elevated if the victim died, and Wells responded with an incriminating statement. *Id.* Wells sought suppression citing the lack of *Miranda* warnings, but the Court held that the officer's statement to other officers could not "be considered the functional equivalent of questioning." *Id.* We are similarly convinced that the police conduct in this matter does not constitute an interrogation. Consequently, the court erred in granting suppression.

<u>The Warrant</u>

The court concluded the warrant was not based on probable cause where the affidavit in support relied on illegally obtained information – the search

of the prescription bottle and Steven's statements – and an insufficient independent investigation. Given our determination that the search and statements were erroneously suppressed, the court's analysis on this point is necessarily undermined and must be reversed. Though we could remand for further consideration of the sufficiency of the warrant, because we determine the claim to be dispositive, we elect instead to consider the Commonwealth's alternative argument for denying suppression – that the *Leon* good-faith exception applied. *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

In *Leon*, the Supreme Court announced a good-faith exception to the general rule that evidence obtained through an illegal search is not admissible against the accused, which was subsequently adopted by the Kentucky Supreme Court in *Crayton v. Commonwealth*, 846 S.W.2d 684 (1992). Under the *Leon* exception, the exclusionary rule is not applied when officers execute a search in "objectively reasonable reliance" upon a warrant issued by a neutral judge that is later held invalid. *Leon*, 468 U.S. at 922, 104 S. Ct. at 3420. The exception, however, is unavailable if: (1) the affidavit contains information that the attesting officer knew or should have known was false or misleading, (2) the issuing magistrate wholly abandoned their judicial role, (3) no reasonably well-trained officer should rely on the warrant, (4) the warrant is so lacking in indicia of probable cause as to render reliance unreasonable, or (5) the warrant fails to

identify the place to be searched or the thing to be seized. *Id.* at 923, 104 S. Ct. at 3421; *Crayton*, 846 S.W.2d at 687-88.

Herein, the Commonwealth renews its claim that the exception should apply where the Camerons have not alleged the existence of any disqualifying factor and the affidavit did not include unlawfully obtained evidence. In the order on appeal, after noting that Officer Messinger was both the affiant who applied for the warrant and the officer who executed the search, the court concluded without supporting citation that the *Leon* good-faith exception was not available. As this Court is unaware of any such bar, we hold that the trial court erred. And because we agree that the Camerons have failed to advance any facts or arguments disputing the availability of the exception, we further hold that the evidence should not have been suppressed.

<u>Paula's Standing to Seek Suppression</u>

Finally, given our conclusion that the evidence herein was erroneously suppressed, we need not reach this issue.

**CONCLUSION**

Therefore, and for the foregoing reasons, the judgment of the Rockcastle Circuit Court is hereby REVERSED.

-13-

ALL CONCUR.


BRIEFS FOR APPELLANT:

Daniel Cameron
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky

NO BRIEF FOR APPELLEES
FILED.