Christopher WELCH, Appellant,

v.

COMMONWEALTH OF KENTUCKY, Appellee.

No. 2002–SC–0645–MR.

Supreme Court of Kentucky.

Nov. 18, 2004.

Timothy G. Arnold, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Elizabeth A. Heilman, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellee.

LAMBERT, Chief Justice.

Appellant, Christopher Welch, was convicted of one count of sodomy in the first degree and of one count of sexual abuse in the first degree. He was sentenced to a twenty-year term of imprisonment. The charges arose from statements made by Appellant during his treatment at a juvenile sex offender program. Appellant entered a conditional guilty plea to the above charges and reserved the right to appeal the Boyle Circuit Court's denial of his motion to suppress these statements. The issue here is whether statements made by a juvenile to counselors without *Miranda*[1] warnings during treatment may be used to pursue a new criminal investigation and prosecution.

Appellant was adjudicated as a juvenile sex offender and committed to the Department of Juvenile Justice ("DJJ"). He was sent to Rivendell, a treatment facility, to participate in the juvenile sex offender treatment program. While at Rivendell and participating in the treatment program, Appellant disclosed to his counselor several uncharged acts of sexual misconduct. The counselor notified social workers who then notified the Boyle County Sheriffs Department. Deputy Sheriff Jim

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Wilcher investigated the allegations and he, along with Kentucky State Police Detective Lisa Rudinski, traveled to Rivendell to interview Appellant. The officers gave Appellant his *Miranda* warnings and proceeded to interview him. Appellant gave the officers a full statement in which he confessed to sodomizing a five-year-old child approximately twenty times. Appellant's confession was consistent with the information previously gathered by Deputy Wilcher from the young child.

Appellant presented evidence at the suppression hearing regarding the juvenile sex offender treatment program and evidence regarding the lack of warnings given to him. The evidence revealed that participation in the juvenile sex offender program is not voluntary, but rather the participants are at these treatment programs by court order and must follow the rules and procedures of the program. The program uses group therapy and group dynamics as a means to further the goals of the program. Participants are strongly encouraged, by counselors and other group members, to admit and disclose all prior sexual misconduct. This fosters treatment and reprogramming of the behavior of those involved. Testimony during the suppression hearing described participation in this part of the program as essential to progress toward completion of the program as ordered by the court. Progress in the program is required to obtain and keep certain privileges during treatment.

Appellant received no warning or notice that his counseling disclosures could result in criminal prosecution. When Appellant made the statements to counselors at Rivendell, no *Miranda* warnings were given.

The first time Appellant was made aware of his right to remain silent occurred when he was interviewed at the treatment facility by the police officers. The record does not contain any written verification of waiver at that time. As a result of his statements, Appellant was charged with the offenses herein. Following the denial of his suppression motion, Appellant entered the conditional guilty plea from which this matter of right appeal [2] is taken.

Appellant argues that the trial court erred when it failed to suppress his statements made to the counselors at Rivendell. He presents three alternative reasons as to why the statements should have been suppressed: (1) the statements were obtained in violation of *Miranda*, (2) the statements were involuntary, and (3) the statements were privileged. The Commonwealth argues that such statements made to counselors are not privileged and are voluntary, and that the counselors are not agents of the police.

■ Appellate review of a motion to suppress is governed by the standard expressed by the Supreme Court of the United States in *Ornelas v. United States* [3] and adopted by this Court in *Adcock v. Commonwealth.*[4] The approach established by the Supreme Court of the United States is a two-step process that first reviews the factual findings of the trial court under a clearly erroneous standard.[5] The second step reviews *de novo* the applicability of the law to the facts found.[6] The only evidence of record was presented by Appellant during the suppression hearing. The Commonwealth did not present any evidence. As summarized hereinabove, we

**2.** Ky. Const. § 110(2)(b).

**3.** 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

**4.** Ky., 967 S.W.2d 6 (1998).

**5.** *Ornelas,* 517 U.S. at 699, 116 S.Ct. at 1663.

**6.** *Id.*

discern no clear error regarding the pertinent factual findings.

■ Upon review of the law, the initial inquiry must be whether the Fifth Amendment of the United States Constitution or Section 11 of the Kentucky Constitution securing the privilege against self-incrimination is applicable to this situation. The privilege has been held to protect a person from being forced to put forth evidence against himself or herself and "the availability of the privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites."[7] Moreover, the privilege is not limited to criminal proceedings and protects in circumstances where the person's freedom is curtailed.[8] Here, the unwarned statements made by Appellant while he was in state custody were used to initiate a new prosecution and this type of communication is of a character to require an analysis under the Fifth Amendment and Section 11 of the Kentucky Constitution. Kentucky decisions generally hold Section 11 to be coextensive with the Fifth Amendment.[9]

■ A custodial interrogation is a prerequisite for invoking the necessity of *Miranda* warnings.[10] It has been held that "*Miranda* and its progeny in this Court [the Supreme Court of the United States] govern the admissibility of statements made during custodial interrogation

in both state and federal courts."[11] *Miranda* is not just a prophylactic rule but is rather a constitutionally-based rule of law.[12] Here, Appellant was committed by the court to DJJ and placed in the juvenile sex offender program at the treatment facility. For this reason, Appellant's participation in the juvenile sex offender program was involuntary. Based upon the court ordered commitment, Appellant was in state custody. During the treatment program, the counselors intensely questioned Appellant, not only about the offense that resulted in the commitment, but also about any other sexual misconduct. The questioning regarding other sexual misconduct was a necessary part of the juvenile sexual offender program where the participants were "strongly encouraged" to admit additional sexual misconduct. Such questioning and encouraged disclosure amounted to coercion in the course of a custodial interrogation.

■ Another *Miranda* requirement is state action. The counselors who questioned Appellant were employees of the treatment facility, not law enforcement officers. Generally, questioning by law enforcement is required to trigger the necessity for *Miranda* warnings. On the other hand, the Supreme Court of the United States has recognized the applicability of *Miranda* in situations not involving law enforcement. In *Estelle v. Smith*,[13] the Court held that a psychiatrist, who per-

---

7. *In re Gault*, 387 U.S. 1, 49, 87 S.Ct. 1428, 1455, 18 L.Ed.2d 527 (1967).

8. *Miranda*, 384 U.S. at 467, 86 S.Ct. at 1624.

9. *See Hourigan v. Commonwealth*, Ky., 962 S.W.2d 860, 864 (1998); *Commonwealth v. Cooper*, Ky., 899 S.W.2d 75, 78 (1995); *Newman v. Stinson*, Ky., 489 S.W.2d 826, 829 (1972) (holding that the Fifth Amendment and Section 11 of the Constitution of Kentucky provide identical protection against self-incrimination).

10. *See Miranda*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

11. *Dickerson v. United States*, 530 U.S. 428, 431, 120 S.Ct. 2326, 2329–30, 147 L.Ed.2d 405 (2000).

12. *Id.*

13. 451 U.S. 454, 469, 101 S.Ct. 1866, 1876, 68 L.Ed.2d 359 (1981).

formed an involuntary evaluation of the defendant, could not testify regarding information that had been gathered by questioning during the evaluation, because the defendant had not been apprised of his Fifth Amendment rights. The examining physician was not a law enforcement officer, but the Court held that the doctor went beyond a routine examination and gathered information during the evaluation to testify concerning the defendant's future dangerousness and to assist the prosecution in seeking the death penalty. Here, the counselors gathered information regarding previously undisclosed sexual misconduct and delivered that information to law enforcement officers.

■ The title and employer of the questioner are not the sole basis for determining state action; rather courts must determine whether the interrogation was such as to likely result in disclosure of information which would lead to facts that would form the basis for prosecution.[14] In this case, the likelihood of such a disclosure was virtually overwhelming. Accordingly, the counselors who interrogated Appellant were state actors for the purpose of the Fifth Amendment, and Appellant should have been informed of his *Miranda* rights regarding his privilege against self-incrimination.

Supporting this view is *State v. Evans*,[15] where the Ohio Court of Appeals held that statements disclosed to counselors by a juvenile, who was under involuntary commitment for treatment, were not admissible against the juvenile. The facts in *Evans* and the facts of this case are very similar, in that both cases dealt with juveniles who had been committed by the court to receive treatment. Another similarity is that both juveniles, upon the encouragement of the treatment program, admitted to prior misconduct that resulted in subsequent prosecution. The *Evans* court held the appellant's statements to be inadmissible in violation of the Fifth Amendment. The court held that the appellant was in the "classic penalty" situation wherein the privilege against self-incrimination is self-executing, and he "was unconstitutionally forced to choose between a substantial penalty and self-incrimination."[16] The *Evans* court held that the trial court had properly suppressed the appellant's written and oral confession that he gave at the treatment center. Appellant's circumstance is not dissimilar and his statements to counselors should have been suppressed.

■ Appellant further argues that his statements to police should be suppressed as fruit of a poisonous tree.[17] The Commonwealth argues that since the police gave Appellant his *Miranda* warnings, his statements to them should be admissible. On the contrary, Appellant's statements made to the police were indeed fruit of a poisonous tree because those statements were obtained as a direct result of information improperly gathered by the counselors at the treatment facility. Without Appellant, the police would have had no source from which to gain information for the new charges against Appellant. Moreover, the statements gathered by the police were not attenuated from the state-

---

**14.** *United States v. D.F.*, 63 F.3d 671, 683–84 (1995), *vacated and remanded*, 517 U.S. 1231, 116 S.Ct. 1872, 135 L.Ed.2d 169 (1996), *remanded to*, 115 F.3d 413 (1997) (holding that the Fifth Amendment analysis contained in *D.F.*, 63 F.3d 671 was correct).

**15.** 144 Ohio App.3d 539, 760 N.E.2d 909 (2001), *discretionary appeal not allowed*, 93 Ohio St.3d 1473, 757 N.E.2d 771 (2001).

**16.** *Id.* at 924.

**17.** *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

ments made to the counselors.[18] Consequently, Appellant's statements to the police should also have been suppressed.

Supporting this view is a recent United States Supreme Court decision, *United States v. Patane,*[19] which holds that an unwarned but voluntary statement is subject to the exclusionary rule, but that evidence obtained as a result of such a statement is not.[20] However, if the confession was coerced and the person to whom the statement was made was a state actor, *Patane* states that "those subjected to coercive police interrogations have an automatic protection from the use of their involuntary statements (or evidence derived from their statements) in any subsequent criminal trial."[21] As we have held Appellant's confession to the counselors to have been involuntary because coerced by a state actor, and to have led directly to the police investigation and discovery of Appellant's criminal conduct, his post-*Miranda* confession to the police and the evidence derived from either confession is inadmissible against him in any subsequent criminal trial.

Since we have decided the case on constitutional grounds, we need not address the parties' arguments pertaining to the applicability of KRS 197.440, KRS 635.527, and KRS 620.030(1).

For the foregoing reasons, the judgment of the Boyle Circuit Court is reversed and this cause is remanded for further proceedings consistent with this Opinion.

COOPER, JOHNSTONE, and STUMBO, JJ., concur.

KELLER, J., dissents by separate opinion in which GRAVES and WINTERSHEIMER, JJ., join.

KELLER, Justice, dissenting.

I respectfully dissent for three reasons: (1) Appellant's statements to the police were made after *Miranda*[1] warnings were given and, therefore, are admissible; (2) *Wong Sun's*[2] "fruit of the poisonous tree" doctrine does not require the exclusion of Appellant's statements to police or the derivative evidence discovered as a result of his statements, i.e., the identity of his other victims; and (3) Appellant was not "in custody" within the meaning of *Miranda* when he first confessed to counselors.

## I. Statements to Police

The Supreme Court of the United States has previously addressed whether *Miranda* warnings given by police officers after an unwarned confession are effective. In *Oregon v. Elstad,*[3] the Court rejected the application of the "fruit of the poisonous tree" doctrine to a subsequently warned confession after an initial unwarned statement was given and held that an officer's good-faith failure to give *Miranda* warnings did not require suppression of a post-*Miranda* statement.[4] The

---

18. *Id., citing Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939).

19. —— U.S. ——, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004).

20. *Id.* at ——, 124 S.Ct. at 2626

21. *Patane,* —— U.S. at ——, 124 S.Ct. at 2628 (*quoting Chavez v. Martinez,* 538 U.S. 760, 769, 123 S.Ct. 1994, 2002, 155 L.Ed.2d 984 (2003)).

1. *Miranda v. Arizona,* 384. U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

3. 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

4. *Missouri v. Seibert,* —— U.S. ——, 124 S.Ct. 2601, 2610 n. 4, 159 L.Ed.2d 643 (2004) ("In *Elstad,* 'a simple failure to administer the warnings, unaccompanied by any actual coer-

Court recently clarified *Elstad's* holding in *Missouri v. Seibert,*[5] where it explained that if the police deliberately withhold the *Miranda* warnings so as "to obscure both the practical and legal significance of the admonition when finally given,"[6] then any subsequent post-warning statements resulting from the violation are excluded. The Court reiterated that where the failure to give *Miranda* warnings was in good faith, e.g., where the questioner may not realize that *Miranda* warnings are required, any subsequent post-warning statements are not excluded. Here, it is undisputed that Appellant's first statements were not the result of any plan by the counselors to subvert *Miranda*. Clearly the counselors did not realize that *Miranda* warnings might be required.[7] Accordingly, Appellant's post-*Miranda* statements to the police are admissible.

## II. Identity of Other Victims

In *United States v. Patane,*[8] the Court held that the failure to give *Miranda* warnings does not require suppression of the fruits of a defendant's unwarned statement:

> In this case we must decide whether a failure to give a suspect the warnings prescribed by [*Miranda*], requires suppression of the physical fruits of the suspect's unwarned but voluntary statements. The Court has previously ad-

dressed this question but has not reached a definitive conclusion .... *Because the Miranda rule protects against violations of the Self–Incrimination Clause, which, in turn, is not implicated by the introduction at trial of physical evidence resulting from voluntary statements, we answer the question presented in the negative.*[9]

The *Self*–Incrimination Clause does exactly what its name implies: It creates a right against self-incrimination. It does not create a right against incrimination by others. Thus, the Self–Incrimination Clause is not implicated by the introduction at trial of the testimony of others, e.g., the victim. The Appellant can assert his Fifth Amendment rights only to bar the introduction of statements that he has made, not statements made by others. Thus, even if we assume that Appellant's statements should be suppressed, the fruits of his otherwise voluntary statements, i.e., the identity of his other victims, are not subject to suppression, and the newly identified victims may testify against him.

## III. Custodial Interrogation

At first blush, it seems illogical to maintain that a person adjudicated a juvenile sexual offender and remanded to a treatment facility is not in custody when he is questioned. Of course Appellant was in

---

cion or other circumstances calculated to undermine the suspect's ability to exercise his free will' did not 'so tain[t] the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period.' ").

**5.** —— U.S. ——, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004).

**6.** *Seibert,* —— U.S. at ——, 124 S.Ct. at 2615, 159 L.Ed.2d at 660 (Kennedy, J., concurring).

**7.** In *State v. Evans,* 144 Ohio App.3d 539, 760 N.E.2d 909 (2001), the Court of Appeals of Ohio determined that staff members of a juve-

nile treatment facility were not required to give *Miranda* warnings even though the juveniles were encouraged to confess past offenses because the staff members were not law enforcement officials or their agents.

**8.** —— U.S. ——, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004).

**9.** —— U.S. at ——, 124 S.Ct. at 2624, 159 L.Ed.2d at 673 (citations omitted; emphasis added).

custody, but that does not mean that Appellant was "in custody" for the purposes of *Miranda* when he first confessed to the counselors. And in Appellant's situation, I do not believe that he was "in custody" within the meaning of *Miranda.*

Although Kentucky's appellate courts have not previously addressed whether one who is imprisoned is per se "in custody" for purposes of *Miranda,* the Second, Fourth, Seventh, Eighth and Ninth Circuits of the United States Court of Appeals have addressed this issue and have held that merely because the defendant is in prison on an unrelated charge does not mean the defendant is "in custody" under *Miranda.*[10] They uniformly hold that the totality of the circumstances determines the custody issue.[11]

> Factors the courts considered in determining whether the prisoner was "in custody" include: the defendant's freedom to leave the scene and the purpose, place and length of the questioning; a change in the surroundings of the prisoner which results in an added imposition on his freedom of movement; and

whether circumstances suggest any measure of compulsion *above and beyond the confinement.*[12]

In *U.S. v. Chamberlain,*[13] the Court stated that "[i]n determining whether [the investigators'] conversations with Chamberlain amounted to custodial interrogation, we are 'concerned with the suspect's subjective belief that "his freedom of action is curtailed to a degree associated with formal arrest" and whether that belief is objectively reasonable under the circumstances.'"[14] The Court then utilized a six-factor analysis set out in *United States v. Griffin*[15] to determine how a reasonable person would have felt in the situation:

> A determination of how a reasonable person would have felt in this situation—whether a reasonable person would have thought he was in custody—requires close consideration both of how Chamberlain got to the interview room and of the atmosphere of the interviews once Chamberlain arrived for, and during, questioning.

10. *See United States v. Willoughby,* 860 F.2d 15, 23 (2nd Cir.1988) ("[W]e believe that the mere fact of imprisonment does not mean that all of a prisoner's conversations are official interrogations that must be preceded by *Miranda* warnings."), *cert. denied,* 488 U.S. 1033, 109 S.Ct. 846, 102 L.Ed.2d 978 (1989); *United States v. Conley,* 779 F.2d 970, 972 (4th Cir.1985) ("declin[ing] to read *Mathis* as compelling the use of *Miranda* warnings prior to all prisoner interrogations and [holding] that a prison inmate is not automatically always in 'custody' within the meaning of *Miranda*"), *cert. denied,* 479 U.S. 830, 107 S.Ct. 114, 93 L.Ed.2d 61 (1986); *U.S. v. Menzer,* 29 F.3d 1223, 1232 (7th Cir.1994) (where no "added imposition on his freedom of movement" nor "any measure of compulsion above and beyond [imprisonment]," defendant held not "in custody" for the purposes of *Miranda*); *Leviston v. Black,* 843 F.2d 302, 304 (8th Cir.1988) ("While *Miranda* may apply to one who is in custody for an offense unrelated

to the interrogation, [*Mathis,* 391 U.S. at 4–5, 88 S.Ct. at 1504–05], incarceration does not *ipso facto* render an interrogation custodial ....."), *cert. denied,* 488 U.S. 865, 109 S.Ct. 168, 102 L.Ed.2d 138 (1988); *Cervantes v. Walker,* 589 F.2d 424 (9th Cir.1978) (questioning of inmate by deputy sheriff about contents of matchbox containing a substance resembling marijuana during a routine search of an inmate's belongings held noncustodial).

11. *See U.S. v. Menzer,* 29 F.3d 1223, 1232 (7th Cir.1994).

12. *Id.* (citations, internal quotation marks, brackets, and ellipses omitted; emphasis added).

13. 163 F.3d 499 (8th Cir.1998).

14. *Id.* at 503.

15. 922 F.2d 1343 (8th Cir.1990).

The six factor analysis set out in *United States v. Griffin* provides guidance in making this determination:

(1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest;

(2) whether the suspect possessed unrestrained freedom of movement during questioning;

(3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions;

(4) whether strong arm tactics or deceptive stratagems were employed during questioning;

(5) whether the atmosphere of the questioning was police dominated; or,

(6) whether the suspect was placed under arrest at the termination of the questioning.

All six of these factors need not be present for a finding of custody requiring a *Miranda* warning. Nor is this list exhaustive. The custody issue ultimately "focuses upon the totality of the circumstances." [16]

Here, Appellant voluntarily participated in the Sex Offender Treatment Program at the juvenile facility. It was his choice to attend the sessions, and a decision not to attend or participate would not increase his sentence.[17] During the sessions, he was free to discuss his previous sex offenses, or not. And the counselors, to whom he made his first statements, although employed by a state facility, questioned Appellant only for the purpose of treatment. The counselors were not law enforcement officers and did not create a police-dominated atmosphere during their sessions with him. Furthermore, the counselors did not require that Appellant confess to law enforcement officers when they came to interview him.

The counselors encouraged Appellant to discuss his previous offenses in an effort to provide treatment and not as a "strong arm tactic" or a "deceptive stratagem." It is undisputed that the counselors were not seeking to elicit information from Appellant for the purpose of his prosecution. Unlike the situation in *Estelle v. Smith* [18] where the psychiatrist performed an involuntary exam and testified at the prosecutor's behest, the counselors in the present case worked with the Appellant for treatment purposes only. Notwithstanding the assertion by the majority, Appellant was not actually coerced by the counselors to disclose the information about his prior sexual offenses—encouragement does not equal coercion. Thus, I join in the trial court's disagreement with Appellant that Appellant's statements, first to the counselors, and then later to the sheriff's deputy and state trooper, were coerced.

I believe that the majority's reliance on *State v. Evans* is misplaced given that the case precedes the Supreme Court's decisions in *Patane* and *Seibert*, and other than sharing with the present case the general subject matter of a juvenile who confesses in a treatment program, *Evans* is factually different. In *Evans*, although the Court found that the counselors were not law enforcement officials or their

**16.** *Chamberlain*, 163 F.3d at 503 (citations omitted).

**17.** *See Martin v. Chandler*, 122 S.W.3d 540 (Ky.2003) (holding requirement that prisoner complete Sex Offender Treatment Program to

be eligible to earn discretionary good time credits towards his sentence did not result in increase in punishment).

**18.** 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).

agents, and thus no *Miranda* warnings were required, the Court suppressed two of the three statements made by the juvenile because the "grinding duration and inevitability" of the counselor's questioning (where he was questioned until he gave an incriminating statement) [19] and the threats for failure to confess to offenses of which he was suspected effectively created a situation in which the juvenile would be punished for exercising his Fifth Amendment right against self-incrimination. In Appellant's case, there is no evidence that Appellant was threatened with punishment for failure to admit committing the offense or that he was exhaustively questioned. There is also no evidence that the counselors suspected Appellant committed additional crimes and were seeking to obtain his confession.

Thus, I believe that although Appellant was imprisoned at the time he attended the sessions, he was not "in custody" for the purposes of *Miranda* when he made his admissions to the counselors.

For the above three reasons, or any one separately, I dissent and would affirm Appellant's conviction.

GRAVES and WINTERSHEIMER, JJ., join this dissenting opinion.

---

19. *State v. Evans,* 144 Ohio App.3d 539, 760 N.E.2d 909, 915 (2001) ("Hillcrest authorities deemed Evan's first attempt to complete the 'commitment offense paper' unacceptable because 'incomplete.' The staff required that he try again. To assist him in being more thorough, a counselor provided Evans with a list of fourteen charges that at one time had been brought against him, and he was specifically told to write separately about each of them.").