Christopher Lee JACKSON, Appellant

v.

COMMONWEALTH of Kentucky, Appellee

No. 2013–CA–000582–MR

Court of Appeals of Kentucky.

RENDERED: DECEMBER 5, 2014; 10:00 A.M.

Discretionary Review Denied by Supreme Court September 16, 2015

BRIEFS FOR APPELLANT: John Gerhart Landon, Assistant Public Defender, Dept. of Public Advocacy, Frankfort, Kentucky

BRIEF FOR APPELLEE: Jack Conway, Attorney General of Kentucky, Jeffrey A. Cross, Assistant Attorney General, Frankfort, Kentucky

BEFORE: COMBS, STUMBO AND THOMPSON, JUDGES.

*OPINION*

THOMPSON, JUDGE:

A jury found Christopher Lee Jackson guilty but mentally ill of assault in the third degree, and he was sentenced to three-years' imprisonment. In this direct appeal, Chris alleges that the trial court impermissibly permitted the prosecution to introduce rebuttal testimony regarding his statement made to a psychiatric access nurse invoking his right to remain silent. He also argues that pursuant to Kentucky Revised Statutes (KRS) Chapter 202A, he was entitled to be involuntarily hospitalized for psychiatric treatment prior to being criminally charged. He requests this Court remand the case to the trial court in order to make a finding that KRS Chapter 202A was violated and "fashion an appropriate remedy." We conclude the psychiatric access nurse was not a state actor and, therefore, the use of Chris's state-

ment did not violate Chris's right to remain silent. Further, Chris's claim that KRS Chapter 202A was violated is not properly presented in this direct appeal.

Chris is a young man who suffered from mental illness as a teenager. He had been hospitalized at Western State Hospital and discharged in October 2009. Although he was prescribed various medications to treat his schizophrenia, Chris stopped taking his medication and his mental condition gradually deteriorated.

On February 10, 2010, officers were called to the Jackson residence by a family member after Chris was wandering the house with a hammer and knife and appeared confused. Officer Youngman and Officer Adamson arrived at approximately 3:00 p.m. and, once inside the residence, approached Chris. It was decided by the officers and Chris's father that Chris would be taken to a psychiatric facility.

Chris then became uncooperative and struck Officer Adamson and jumped on top of her striking her with his fists. After Officer Youngman deployed his Tazer twice without effect, he ordered Chris to stop striking Officer Adamson and threatened he would shoot. At this point, Chris stopped the assault on Officer Adamson, put his hands up, and was handcuffed. During the scuffle, Officer Youngman was struck in the forehead by Chris and Officer Adamson suffered bruising to her face and jaw.

Chris was handcuffed and transported to a local hospital emergency room where the staff placed Chris in a psychiatric observation room. The psychiatric access nurse, Steven Stewart, then entered the room to speak with Chris. Immediately upon Stewart's entry into the room, Chris spontaneously announced: "I know my rights. I don't have to talk to you." Stewart then left the room and observed Chris on a closed circuit television for ten to fifteen minutes during which time Chris showed no signs of mental distress. He was not admitted to the hospital and was released to police custody.

Chris was arrested and taken to jail. Due to his mental health issues, Chris was evaluated multiple times and admitted to the Kentucky Correctional Psychiatric Center (KCPC) in March 2010. After he was involuntarily committed, the charges were dismissed and he was not reindicted until after his release on September 6, 2011.

Prior to trial, Chris gave notice of his intent to present an insanity defense. At trial, Chris presented evidence regarding his history of mental health issues and his treatment, including testimony from Dr. Cooley, the head of forensics at KCPC. He opined Chris was not able to appreciate the nature of his acts at the time of the incident on February 10, 2010.

In rebuttal, the Commonwealth called Stewart who testified he does in-take triage-type work when a patient is referred for mental health evaluation by a doctor. He testified that upon meeting Chris, Chris immediately stated; "I know my rights. I don't have to talk to you." In closing, the Commonwealth argued Chris's statement to Stewart demonstrated a presence of mind that belied his insanity defense.

Chris contends his statement to Stewart was tantamount to an invocation of his right to remain silent and, pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), his silence could not be used to rebut his insanity defense. The basic premise of *Miranda* is well known. To protect a suspect's privilege against self-incrimination under the Fifth Amendment to the United States Constitution, the United States Supreme Court mandated certain warnings be given

to a criminal suspect prior to being subjected to a custodial interrogation. *Id.* at 444, 86 S.Ct. at 1612. Those warnings include the right to remain silent. *Id.*

In *Baumia v. Commonwealth,* 402 S.W.3d 530, 537 (Ky.2013), the Court observed that even prior to *Miranda,* the United States Supreme Court held the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." (quoting *Griffin v. State of California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)). Chris contends that same reasoning should be applied where a suspect's silence is used to rebut an insanity defense.

▇ We may reverse a trial court's determination of the admissibility of evidence only if a trial court has abused its discretion. *Hartsfield v. Commonwealth,* 277 S.W.3d 239, 242 (Ky.2009). An abuse of discretion occurs "when its decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. In this instance, we must resolve whether the trial court applied the correct legal principle." *Id.* (footnote omitted).

▇ *Miranda* applies when a suspect is subjected to a "custodial interrogation." A custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612. Stated succinctly, *Miranda* requires "state action." *Welch v. Commonwealth,* 149 S.W.3d 407, 410 (Ky.2004). Thus, the threshold question is whether Chris invoked his right to silence to a state actor.

The United States Supreme Court has held a person other than a member of law enforcement may be treated as a state actor for *Miranda* purposes. In *Estelle v.*

*Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), a psychiatrist performed an involuntary evaluation of the defendant. The Court held *Miranda* applies despite that the psychiatrist was not a law enforcement officer because the doctor gathered information during the evaluation to testify concerning the defendant's future dangerousness and to assist the prosecution in seeking the death penalty. *Id.* at 468–69, 101 S.Ct. at 1876.

Our Supreme Court has also had occasion to consider the application of *Miranda* when there was no law enforcement involved in the questioning. Particularly useful to our analysis are two cases dealing with interactions between a health care provider and a suspect.

Confronted with facts somewhat similar to those now presented, in *Fields v. Commonwealth,* 12 S.W.3d 275 (Ky.2000), the Court considered whether a health care provider was a state actor for *Miranda* purposes. Fields was arrested for murder and transported by a Kentucky State Trooper to King's Daughters' Medical Center for treatment of injuries to his right arm. An emergency technician (EMT) was permitted to testify that he asked Fields how he had blood on his arms and clothing and Fields responded: "You stupid s.o.b., if you had just killed some lady, you would be covered with blood, too." *Id.* at 279.

Rejecting any argument of an alleged *Miranda* violation, the Court factually distinguished *Estelle,* pointing out "[t]he psychiatrist was deemed a state actor, because he had been appointed by the court to conduct the examination." *Id.* at 283. In contrast, in *Fields* "there was no evidence that EMT Dobson was requested or appointed by any state agency to interrogate [Fields] about the origin of the blood on his body and clothing." *Id.* at 283–84. The Court concluded: "The mere fact that

the police transported [Fields] to King's Daughters' Hospital for treatment of his wounds did not, *ipso facto*, transform Dobson from a hospital employee into a state actor." *Id.* at. 284.

Subsequently, in *Welch,* the Court again was presented with the question as to when a person rendering treatment who is not a member of law enforcement becomes a state actor for *Miranda* purposes. After his adjudication as a juvenile sexual offender and commitment to the Department of Juvenile Justice, Welch was required to participate in a sexual offender treatment program. As part of his treatment, Welch was "strongly encouraged" to admit and disclose all prior sexual misconduct. Upon questioning by a counselor, Welch disclosed uncharged acts of sexual misconduct. The counselor notified social workers who notified police, resulting in a new criminal prosecution. *Welch,* 149 S.W.3d at 408.

Upon review of the trial court's denial of Welch's motion to suppress the statements made to the counselor, the Court held the counselor was a state actor for *Miranda* purposes. It proffered the following guidance: "The title and employer of the questioner are not the sole basis for determining state action; rather courts must determine whether the interrogation was such as to likely result in disclosure of information which would lead to facts that would form the basis for prosecution." *Id.* at 411. In Welch's case, "the likelihood of such a disclosure was virtually overwhelming" and *Miranda* warnings were required. *Id.*

Chris argues this Court does not need to indulge in a factual inquiry into whether Stewart was a state actor and, instead, need merely look to KRS 202A.041(1), which provides in part:

> Any peace officer who has reasonable grounds to believe that an individual is

mentally ill and presents a danger or threat of danger to self, family, or others if not restrained shall take the individual into custody and transport the individual without unnecessary delay to a hospital or psychiatric facility designated by the cabinet for the purpose of an evaluation to be conducted by a qualified mental health professional.

He contends that because the officers were required by statute to transport Chris to a hospital because of his demonstrated mental illness, as a part of that statutory procedure, Stewart was functioning as a state actor.

In one of the few cases addressing KRS Chapter 202A, the federal court in *Simon v. Cook,* 261 Fed.Appx. 873, 885 (6th Cir. 2008), pointed out that KRS 202A.041(1) requires "upon presentment of the allegedly mentally ill individual," the mental evaluator is required to make an independent evaluation of the patient. The evaluation is independent from what the police do and based on the individual's mental status at the time of evaluation. *Id.* In other words, the mental health evaluation is not a step in the prosecution but a means to obtain an independent assessment of the suspect's mental health condition.

As the EMT in *Fields,* Stewart was not present for the purpose of aiding the prosecution and not acting in concert with law enforcement. Moreover, there is nothing in the record to suggest that the circumstances were likely to result in "disclosure of information which would lead to facts that would form the basis for prosecution." *Welch,* 149 S.W.3d at 411. Rather, just as the EMT in *Fields* was present for the purpose of treating Fields's physical needs, Stewart was acting in response to Chris's immediate psychiatric needs. We conclude *Miranda* does not apply and there was no error.

Finally, Chris contends the Commonwealth violated KRS Chapter 202A when it did not involuntarily hospitalize him instead of taking him to jail and filing criminal charges. He admits this issue is presented for the first time on appeal and requests Kentucky Rules of Criminal Procedure (RCr) 10.26 relief.

The palpable error rule affords relief only when an error affects the substantial rights of a party and upon a determination that manifest injustice has resulted from the error. RCr 10.26. To be candid, it seems even Chris is uncertain what relief may be granted. As discussed, he was taken to the hospital for independent evaluation and released to police custody. He was later found incompetent by KCPC, the charges dismissed, and Chris was involuntarily committed and not reindicted until September 2011. Whatever the shortcomings may be in our public health care system for the mentally ill, we can discern no basis for reversal of Chris's felony conviction.

Based on the foregoing, the judgment of the Daviess Circuit Court is affirmed.

ALL CONCUR.