NICKELL, JUDGE:
Menelik Brank appeals from the Henderson Circuit Court's judgment and sentence of imprisonment entered March 2, 2017, following an order denying his motion to suppress and a jury trial. Discerning no error, we affirm.
At approximately 10:00 p.m. on June 19, 2016, Officer Lucas Meredith of the Henderson Police Department was called to the scene of a reported burglary. The victim identified Brank as the suspected *562 perpetrator and provided Officer Meredith a physical description of Brank and his vehicle. Over the police radio, Officer Meredith learned his supervising officer had stopped a vehicle nearby, matching Brank's. On arriving at his supervisor's location, Officer Meredith confirmed the detained passenger was Brank, and observed he met the physical description provided by the victim. Officer Meredith arrested Brank and brought him to the Henderson County Detention Center for intake and booking.
That evening, Deputy Calvin Shields was working third-shift at the Henderson County Detention Center assisting medical staff charged with evaluating detainees prior to booking. Pursuant to usual procedure, Brank was evaluated by detention center medical staff before booking because he appeared to be under the influence. During Brank's medical intake, a nurse observed he did not appear well. His temperature was elevated and he was sweating profusely. Medical staff asked Brank if he had taken anything and he responded he had not. Deputy Shields advised Brank to tell the nurse if he had taken something so she would know how to treat him. Brank again denied taking anything and was moved to a holding cell. While there, Brank still appeared ill. The nurse noted Brank's eyes were rolling, he was sweating profusely and his blood pressure was skyrocketing. The nurse discussed the matter with her supervisor and decided Brank needed to go to the emergency room. Deputy Shields drove Brank to the hospital in his cruiser.
At the hospital, Shields remained with Brank the entire time. The nurse at the hospital asked Brank if he had swallowed anything. Brank said he did not want to incriminate himself. Shields advised Brank to tell the nurse what he had taken or he could die. While the nurse prepared to administer charcoal to induce vomiting, she again asked Brank what he had taken. Brank repeated he did not want to incriminate himself. Deputy Shields again advised Brank to tell the nurse what he had taken so she could treat him. Brank admitted he had swallowed three or four grams of methamphetamine. The nurse administered the charcoal and Brank vomited a plastic bag onto the floor. Medical staff took the plastic bag to the lab for testing. Lab analysis revealed the bag contained methamphetamine.
In August 2016, the Henderson County grand jury indicted Brank for tampering with physical evidence and being a persistent felony offender in the first degree (PFO I).[1] Following indictment, Brank moved to suppress the statements he had made to jail personnel and hospital staff admitting he ingested a bag of methamphetamine. As grounds, Brank argued he was too intoxicated to knowingly and voluntarily waive his right to remain silent. A hearing was held on the motion to suppress the morning of trial. Deputy Shields, the only witness, testified he did not give Brank Miranda[2] warnings, as doing so was not part of his duties. Deputy Shields also testified Brank appeared to understand all the questions being asked of him and was able to answer. After Deputy Shields finished testifying, the Commonwealth offered Brank's medical records into evidence. Without objection from Brank's counsel, the trial court admitted the medical records into evidence. Based on testimony offered at the hearing, Brank's counsel additionally moved to suppress on the grounds Brank had not received Miranda warnings and had clearly *563 invoked his right to remain silent, yet Deputy Shields continued to pressure Brank into telling the nurse what he took, or he could die.
The trial court orally denied Brank's motion to suppress at the hearing, and by written order entered January 10, 2017. The trial court's conclusions of law state, in pertinent part:
[g]enerally speaking, no constitutional provision protects an intoxicated defendant from confessing to a crime. Smith v. Commonwealth , 410 S.W.3d 160, 164 (Ky. 2013). A confession may be suppressed when the defendant is "intoxicated to the point of mania" or is hallucinating, functionally insane, or otherwise unable to understand the meaning of his statements. Id. (quoting Halvorsen v. Commonwealth, 730 S.W.2d 921, 927 (Ky. 1986) ). This does not appear to be the case here. While Brank may have been in distress, the evidence is he was able to understand the questions that were being asked and to give relevant answers.
Further the Court does not believe that the defendant needed to be advised of his Miranda rights before being asked these questions. Neither Shields nor the hospital nurse were requested or appointed to interrogate Brank about any offense. Jackson v. Commonwealth, 468 S.W.3d 874, 876 (Ky. App. 2014) ; Fields v. Commonwealth, 12 S.W.3d 275, 283-84 (Ky. 2000). They were there for the purpose of treating his immediate physical needs, i.e., a potentially fatal drug overdose. Jackson, 468 S.W.3d 874, 877. What he had ingested was relevant and necessary to effectuate this treatment.
At trial, the jury found Brank guilty of tampering with physical evidence and being a PFO I. The Henderson Circuit Court entered its judgment on March 2, 2017, sentencing Brank to fifteen years' imprisonment in accord with the jury's recommendations. This appeal follows.
Brank argues the trial court erred in not suppressing statements he made to hospital staff and Deputy Shields for multiple reasons: (1) Deputy Shields failed to give Miranda warnings prior to interrogating him; (2) Deputy Shields improperly continued to interrogate him after he invoked his right to remain silent; and (3) Deputy Shields' statement Brank might die unless he told the nurse what he had taken was coercive, rendering his subsequent confession involuntary.
In reviewing a trial court's ruling on a suppression motion, an appellate court must first determine if the trial court's factual findings are not clearly erroneous and are supported by substantial evidence.... [D ]e novo review of the trial court's application of the law to the facts completes the analysis.
Frazier v. Commonwealth , 406 S.W.3d 448, 452-53 (Ky. 2013) (citations omitted).
We first consider Brank's argument the trial court erred by failing to suppress his statements to Deputy Shields and hospital staff because they were the product of an un-Mirandized , custodial interrogation, thereby violating his rights under the Fifth and Fourteenth Amendments of the United States Constitution and under Section 11 of the Kentucky Constitution. The trial court denied the motion based on its conclusion Brank was not interrogated for purposes of Miranda when questioned by hospital staff or Deputy Shields, as neither was appointed to interrogate Brank and all questions were relevant to Brank's medical treatment for a possible drug overdose.
The United States Supreme Court has ensured the protection of a defendant's right against self-incrimination, holding:
*564 the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.... The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.
Miranda , 384 U.S. at 444, 86 S.Ct. at 1612. The "procedural safeguards" provided by Miranda are intended to ensure police will inform an individual of his or her rights against self-incrimination and ask whether the individual understands these rights. " Miranda has become embedded in routine police practice to the point where the warnings have become part of our national culture." Dickerson v. United States , 530 U.S. 428, 443, 120 S.Ct. 2326, 2336, 147 L.Ed.2d 405 (2000). Similarly, Section 11 of the Kentucky Constitution provides: "[i]n all criminal prosecutions, the accused ... cannot be compelled to give evidence against himself[.]"
It is fundamental that Miranda only applies to situations implicating compelled self-incrimination. "Indeed, far from being prohibited by the Constitution, admissions of guilt by wrongdoers, if not coerced, are inherently desirable. ... Absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions." To the contrary, custodial questioning is inherently coercive, and protection against this inherent coercion is what Miranda is intended to prevent. Thus, " Miranda warnings are only required when the suspect being questioned is 'in custody.' "
Smith v. Commonwealth , 312 S.W.3d 353, 358 (Ky. 2010) (citations omitted). In reviewing whether Brank's statements were properly admitted, we address three questions: (1) whether Brank was in police custody for Miranda purposes during his treatment at the hospital; (2) whether the nurse or deputy's questions constituted interrogation; and (3) if Brank was in custody for Miranda purposes and was interrogated, whether the public safety, or any other exception applies to allow admission of his statement. See Smith, 312 S.W.3d at 357 ; Fields v. Commonwealth, 12 S.W.3d 275, 283-84 (Ky. 2000).
It is undisputed Brank did not receive Miranda warnings at the hospital but invoked his right to remain silent. The Commonwealth concedes while being treated at the hospital, Brank was in police custody and Deputy Shields was a state actor. However, the Commonwealth argues neither the nurse, who was clearly not a state actor, nor the deputy, ever interrogated Brank. Thus, according to the Commonwealth, Brank's statements were properly admitted and there was no violation of Brank's Fifth Amendment right against self-incrimination, as he was not subjected to custodial interrogation.
Brank does not directly argue the treating hospital nurse was a state actor. However, citing Welch v. Commonwealth, 149 S.W.3d 407, 410 (Ky. 2004), he asserts while being interrogated in custody, even by non-law enforcement on unrelated charges, he was entitled to Miranda warnings. In Estelle v. Smith , 451 U.S. 454, 469, 101 S.Ct. 1866, 1876, 68 L.Ed.2d 359 (1981), the United States Supreme Court held incriminating statements made by a defendant to a psychiatrist during a competency examination were inadmissible against him because the statements were elicited absent preliminary Miranda warnings. The psychiatrist in that scenario was deemed a state actor, because he had been appointed by the court to conduct the examination. Id. , 451 U.S. at 467, 101 S.Ct. at 1875. Here, there is no evidence the nurse *565 was requested or appointed by any state agency to interrogate Brank. The "mere fact that the police transported Appellant" to the hospital for treatment "did not, ipso facto, transform" the treating nurse "from a hospital employee into a state actor." Fields, 12 S.W.3d at 284. Therefore, the trial court correctly found the hospital nurse was not a state actor.
Next, we address whether Brank was subject to custodial interrogation during his hospital treatment. It is undisputed Brank was in custody at the time he received hospital treatment. Thus, if Brank were to be subjected to an interrogation, he was entitled to be read his constitutional rights prior to such questioning, as clearly mandated by Miranda . However, such warnings are not required if a suspect is in custody but no interrogation takes place. Watkins v. Commonwealth , 105 S.W.3d 449, 451 (Ky. 2003) (citations omitted). The term "interrogation" includes:
any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect ... focus[ing] primarily on the perceptions of the suspect, rather than the intent of the police.
Wells v. Commonwealth , 892 S.W.2d 299, 302 (Ky. 1995) (quoting Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980) ).
The Commonwealth argues Deputy Shields' statements that Brank should tell the nurse what he had taken or he could die, was not the functional equivalent of express questioning because such statements were not likely to elicit an incriminating response. Alternatively, the Commonwealth argues even if Brank's statement was a product of custodial interrogation, this Court should extend application of the public safety exception identified in New York v. Quarles , 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), which Kentucky adopted in Henry v. Commonwealth , 275 S.W.3d 194 (Ky. 2008). In Quarles, the United States Supreme Court recognized an exception to the Miranda warning requirement allowing admission of a statement made in response to a custodial interrogation if the questioning was designed to elicit an answer to protect the public. Quarles, 467 U.S. at 655-56, 104 S.Ct. at 2631. The Commonwealth suggests such an exception should also apply in situations where questioning is designed to elicit information to preserve the suspect's life.
We do not address the Commonwealth's request to extend Quarles to non-public medical emergencies, as we hold Deputy Shields did not interrogate Brank at the hospital. Deputy Shields' statement Brank should tell the nurse what he took or he could die was a factual assertion, not an express question. We adopt the Commonwealth's position that Deputy Shields' statements can be viewed as likely to elicit a statement Brank may have overdosed on controlled substances, but taking controlled substances would not necessarily subject Brank to criminal sanctions. Kentucky does not criminalize use of controlled substances, only possession of them. See, e.g. , KRS 218A.1414. Here, nothing in the record suggests Deputy Shields was acting in an investigative capacity, or should have known his statements would lead to an admission of tampering. Thus, the trial court's finding that Deputy Shields did not interrogate Brank is clearly supported by substantial evidence and is, therefore, conclusive. Accordingly, the trial court did not err in admitting Brank's statements.
Brank next argues the trial court erred in failing to suppress his statements, alleging they were the involuntary product *566 of Deputy Shields' coercive threat that Brank must confess or risk dying. Brank fails to cite where in the record this alleged error was preserved. Kentucky Rules of Civil Procedure 76.12(4)(c)(v) requires the brief for appellant to contain "a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." Because Brank has not shown this issue is preserved for appeal, the only appellate review available to him is under the palpable error standard. RCr[3] 10.26.
Whether to undertake palpable error review is within the sole discretion of the appellate court. See id. ("A palpable error ... may be considered ... by an appellate court on appeal[.]") (emphasis added); Commonwealth v. Pace , 82 S.W.3d 894, 895 (Ky. 2002) ("An appellate court may consider an issue that was not preserved[.]"). "Absent extreme circumstances amounting to a substantial miscarriage of justice, an appellate court will not engage in palpable error review pursuant to RCr 10.26 unless such a request is made and briefed by the appellant." Shepherd v. Commonwealth , 251 S.W.3d 309, 316 (Ky. 2008).
Here, Brank requests palpable error review, citing RCr 10.26. However, Brank does not state how the alleged error amounts to palpable error or how he suffered manifest injustice at the hands of the trial court. As a result of Brank's failure to cite where the alleged error was preserved and to argue how the alleged error warrants palpable error review, we decline to engage in a substantive analysis of this argument. We discern no error in the trial court's denial of Brank's motion to suppress.
For the foregoing reasons, we affirm the Henderson Circuit Court.
ALL CONCUR.

Kentucky Revised Statutes (KRS) 532.080.

Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Kentucky Rules of Criminal Procedure.