RENDERED: SEPTEMBER 15, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0740-MR

JONATHAN PAGE                                                          APPELLANT

v.
APPEAL FROM UNION CIRCUIT COURT
HONORABLE C. RENE' WILLIAMS, JUDGE
ACTION NO. 19-CR-00169

COMMONWEALTH OF KENTUCKY                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CALDWELL, AND CETRULO, JUDGES.

CALDWELL, JUDGE: Jonathan Page appeals from the trial court's denial of his motion to suppress evidence seized during a traffic stop of a vehicle in which he was a passenger. Additionally, he complains the trial court incorrectly assessed court costs. Having reviewed the briefs of the parties, the trial court's order, and the relevant law, we affirm the trial court in both respects.

**FACTS**

On September 16, 2019, Jonathan Page (Page) was the passenger in a vehicle pulled over by the police in Union County by a Morganfield Police Department officer. The officer stopped the vehicle because it had expired tags. As the officer was approaching the vehicle, he noticed the smell of marijuana and had both the driver and Page exit the vehicle. While Page was exiting the vehicle, the officer observed him toss two baggies on the ground. The officer retrieved the baggies, which contained suspected methamphetamine.

While continuing to search Page, the officer found more suspected bagged methamphetamine on his person, along with a pipe, a marijuana blunt, and over six hundred dollars. A digital scale was found in the vehicle. Page was arrested and transported to the police station. The arresting officer placed the evidence in a temporary locker while processing Page.

At the end of his shift, the arresting officer retrieved the evidence from the temporary locker and placed the baggies into one large evidence bag without emptying the contents, per departmental policy. The officer used a marker to indicate the case number on each item of evidence, including the large evidence bag containing the baggies holding the suspected illicit substance. The officer used the scale in the police department to weigh the bag containing the baggies of suspected methamphetamine and it weighed a total of 20.6 grams. The arresting

officer then deposited the evidence into the evidence chute to be processed by the evidence custodian.

The next day, the evidence custodian processed the items of evidence and the bag containing suspected methamphetamine was sent to the state police laboratory for analysis. Printed identification stickers were placed on the baggies to indicate the case with which the evidence was associated. At the same time, the evidence custodian was processing evidence collected in another matter which involved approximately two (2) grams of suspected powder cocaine. When he was finished processing the evidence, he submitted the evidence to the state police laboratory for analysis.

When the results came back from the state laboratory, the substance associated with the printed label listing Page's case number was identified as cocaine and amounted to 1.752 grams. Noting the discrepancy between the arresting officer's report of what he had seized and what was returned from the laboratory, particularly the amount, the evidence custodian investigated. He determined he must have switched evidence stickers, mistakenly placing the other case's sticker on the evidence in Page's case. The bag actually containing the evidence collected in Page's matter was still located in the department's evidence locker and it had been mislabeled with the other matter's case number. The bag was re-labeled with a sticker containing Page's case number and was submitted to

the state police laboratory for analysis. The evidence custodian was confident the bag which had remained in the department's evidence locker contained the evidence in Page's case because the case number the arresting officer had marked on the baggie prior to dropping it in the evidence locker was visible and was the case number associated with Page's case. The evidence, now believed to be correctly marked, was submitted to the state police lab. The report generated indicated the two bags recovered from Page contained methamphetamine with a total weight of 18.235 grams, exclusive of packaging.

Page filed a motion to suppress the evidence seized from him citing the confusion with the chain of custody. He noted the arresting officer insisted there had been at least three baggies of suspected methamphetamine seized from Page, but even after the "corrections" had been made, only two baggies were attributed to his case, casting doubt on the legitimacy of the "correction."

In a written order, the trial court agreed there was a weight discrepancy between the material weighed by the arresting officer before turning the items in to the evidence custodian (20.6 grams) and the weight of the *two* bags of methamphetamine received back from the lab (18.235 grams) but reasoned the lab weighed the material exclusive of packaging, which explained the approximate 2.5 gram difference in weight. The trial court held the legitimacy of the department's evidence management procedures and whether the "correction" was

valid were questions of fact to be determined by the jury. The motion to suppress was denied.

Page entered a conditional guilty plea to first-degree trafficking in a controlled substance, tampering with evidence, possession of marijuana, and possession of drug paraphernalia. He received a sentence of seven (7) years' imprisonment and now appeals the trial court's denial of his motion to suppress. We affirm.

**STANDARD OF REVIEW**

The standard of review employed in reviewing motions to suppress evidence is well established. "When reviewing a trial court's denial of a motion to suppress, we utilize a clear error standard of review for factual findings and a *de novo* standard of review for conclusions of law. *Welch v. Commonwealth*, 149 S.W.3d 407, 409 (Ky. 2004)." *Jackson v. Commonwealth*, 187 S.W.3d 300, 305 (Ky. 2006).

The imposition of court costs upon a defendant is a matter of sentencing and this Court has inherent authority to correct a sentencing error. *Travis v. Commonwealth*, 327 S.W.3d 456 (Ky. 2010).

**ANALYSIS**

*1. Motion to Suppress*

Page argues the trial court erred in denying his motion to suppress the evidence seized in the case due to the confusion which occurred with the labeling of the bags containing the purported evidence. He does not challenge any of the trial court's factual findings, but only the court's legal conclusion.

The trial court carefully reviewed the matter, including the testimony of both the arresting officer and the evidence custodian at a hearing on the motion. The court determined there was a "reasonable probability" the evidence had not been altered in any material respect.

> Even with respect to substances which are not clearly identifiable or distinguishable, it is unnecessary to establish a perfect chain of custody or to eliminate all possibility of tampering or misidentification, so long as there is persuasive evidence that "the reasonable probability is that the evidence has not been altered in any material respect." *United States v. Cardenas*, 864 F.2d 1528, 1532 (10th Cir. 1989), *cert. denied*, 491 U.S. 909, 109 S. Ct. 3197, 105 L. Ed. 2d 705 (1989). *See also Brown v. Commonwealth*, Ky., 449 S.W.2d 738, 740 (1969). Gaps in the chain normally go to the weight of the evidence rather than to its admissibility. *United States v. Lott*, 854 F.2d 244, 250 (7th Cir.1988).

*Rabovsky v. Commonwealth*, 973 S.W.2d 6, 8 (Ky. 1998).

The trial court ruled any irregularities in the handling of the evidence did not go to admissibility, but to credibility of the evidence as assessed by a jury.

*See Penman v. Commonwealth*, 194 S.W.3d 237, 244 (Ky. 2006), *overruled on other grounds by Rose v. Commonwealth*, 322 S.W.3d 76 (Ky. 2010). "Even if we assume there are gaps or problems in the chain of custody, their presence 'normally go[es] to the weight of the evidence rather than its admissibility.'" *Helphenstine v. Commonwealth*, 423 S.W.3d 708, 717 (Ky. 2014) (citing *Rabovsky*, 973 S.W.2d at 8). We agree with the trial court. The trial court committed no error in denying the motion to suppress.

### 2. Court costs

Page raises for the first time on appeal the question of whether the trial court erred in assessing $165 in court costs. In his brief, he notes he was represented by appointed counsel, so the trial court must have determined he was indigent. However, one may be determined to be indigent, but not a "poor person" who cannot be assessed court costs. *See Maynes v. Commonwealth*, 361 S.W.3d 922, 929 (Ky. 2012) ("Having carefully considered the applicable statutes, we conclude that the trial court was authorized under Kentucky law to impose court costs despite Maynes's status as an indigent defendant entitled to the services of a public defender.").

Page did not question the assessment of costs at the entry of his plea and the imposition of his sentence.

> If a trial judge was not asked at sentencing to determine
> the defendant's poverty status and did not otherwise

presume the defendant to be an indigent or poor person before imposing court costs, then there is no error to correct on appeal. This is because there is no affront to justice when we affirm the assessment of court costs upon a defendant whose status was not determined. It is only when the defendant's poverty status has been established, and court costs assessed contrary to that status, that we have a genuine "sentencing error" to correct on appeal.

*Spicer v. Commonwealth*, 442 S.W.3d 26, 35 (Ky. 2014).

The trial court rescinded a "public defender recoupment fee" of $1,250.00 which had been assessed by the district court. It is clear the trial court determined, at best, Page was indigent, but did not and was not asked to determine he was a "poor person" to whom court costs could not be assessed. We affirm.

## CONCLUSION

We find the trial court did not commit error in denying the motion to suppress evidence or in imposing court costs. The trial court is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Kayla D. Deatherage
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Todd D. Ferguson
Assistant Attorney General
Frankfort, Kentucky